# CASES

### ARGUED AND DETERMINED IN THE

# SUPREME COURT

#### OF THE

## STATE OF WISCONSIN.

HARVEY DURKEE, Appellee,.

vs.

JOSEPH STRINGHAM, Appellant, HENRY STRING-
HAM, WESLEY TRUESDALL, ISAAC TAYLOR,
et al., in Equity ;

and

JOSEPH STRINGHAM, Appellant,

vs.

HARVEY DURKEE, ISAAC TAYLOR, et al., Appellees,
CROSS BILL, in Equity.

#### APPEAL FROM MILWAUKEE CIRCUIT COURT.

Where certain parties, associated in the formation of a joint stock company, for the purpose of holding—(in the name of a trustee)—and improving real estate, and manufacturing lumber, &c.; and to that end, fixed the nominal amount of their capital stock, and apportioned the same, issuing transferrable certificates therefor, to the several parties in interest ; *held*

That these certificates represented an interest in the real and personal property of the association, which a court of equity would protect, and which could

Vol. VIII.                          1

be sold or mortgaged by the owner like other species of property; which sales or pledges had the effect to convey or incumber his proportion of the joint property, subject to the indebtedness of the association, and the equitable rights of the other parties.

An appeal, in Chancery, by one or more of several defendants, or plaintiffs, taken from the decree of the court below generally, and not from any collateral, separate or distinct ruling, opens the whole case in the appellate court for examination, and for the reversal, affirmance, or such modification of the decree as the whole merits and equities of the case seem to require.

*Semble.* The verbal admissions of a party are ever to be received with caution; they are liable to be misunderstood by the witness retailing them, who may have, unintentionally, made important omissions; and they ought not to overcome, and destroy the force of a settlement deliberately made by the parties in interest, and who must have known the true state of the account they were adjusting.

After a protracted litigation, with a full development of the facts and all the necessary parties before the court, to enable it to do complete justice, the cause ought not to go out of court upon any merely technical objection, or nice point of practice.

On the 4th of August, 1843, Harvey Durkee, one of the defendants in this appeal filed his bill of complaint in the District Court of Brown county, against Henry T. Stringham and Joseph Stringham, as follows:

The complainant, Harvey Durkee, of Racine county, in said district and territory, respectfully and humbly shows unto your honor; that on or about the first day of February, in the year of our Lord one thousand eight hundred and thirty-seven, one Albert G. Ellis, of Brown county in said territory, being seized and possessed of the undivided three-fourths in common of certain lands in the then county of Brown, which said lands are hereafter described, and one Chester Ford of said county being seized and possessed of the remaining one undivided fourth part in common of said lands; upon which said lands was a superior water-power and mill-privilege on a certain stream intersecting a portion of said land called the Twin River; and there being and growing upon said land

large and valuable quantities of pine timber; and they, the said Ellis and Ford, as the complainant is informed and believes, being desirous to improve the said lands and water power, and to erect and put in operation thereon, a sawmill and other machinery to be moved by water, and more particularly for the avowed purpose of cutting down, and manufacturing the pine timber growing and being as aforesaid, into lumber, and they, the said Ellis and Ford, not having the necessary means to make such improvements and to make available as aforesaid the great value of the said lands so owned by them, entered into and formed a certain co-partnership or joint stock company for that purpose, known and designated as the Neshoto Lumbering Company, in which they associated with themselves, John P. Arndt, James D. Doty, Charles Durkee, and others, and drew up and signed certain indentures and articles of agreement and association for the better management and government of the affairs of said company:

And the complainant further shows, that the capital stock of said company or co-partnership so formed as aforesaid, was declared to be fifty thousand dollars, divided into five hundred shares of one hundred dollars each, and that any person signing and sealing the said indentures, and paying the sum of ten dollars on each share by him subscribed to the trustee of said company (who was alone authorized to manage and conduct its affairs) should thereby become a partner or owner of the number of shares by him subscribed.

That the lands owned and possessed by said Ellis & Ford as aforesaid were to be and become the property of said company, and were to constitute an investment of part of the capital stock, they, the said Ellis & Ford, in lieu of said lands, and as a consideration for the sale or relinquishment thereof to the use and benefit of said company, were to be owners each of a proportional number of shares of stock in said company.

That in pursuance of said indentures, and articles of association, the said Ellis was made the trustee of said company, and as such trustee this complainant is informed and believes it was the express understanding and agreement, to hold the lands so by him owned, for the sole use and benefit of the said Neshoto Lumbering Company; and the said Chester Ford, thereupon executed and delivered to said Ellis, trustee as aforesaid, a deed of his (Ford's) undivided fourth part of said lands described therein as follows, to wit: * *

* * And the express stipulation contained in said deed, executed and acknowledged as aforesaid, and the understanding between all the parties and associates of the said Neshoto Lumbering Company, was that the said Ellis as trustee as aforesaid, should hold and enjoy the said premises, and every part and parcel thereof, with the privileges and appurtenances thereunto belonging, to and for the use and benefit of said company, and in the manner and form specified and set forth in said indentures and articles of association, entered into between the partners or members and stockholders of said company, for the government thereof, and not otherwise.

That in pursuance of said articles of association, of the Neshoto Lumbering Company, the trustee was to continue in office until the objects of the association were accomplished, unless he should sooner die, resign, or be removed by a majority of the stockholders, or by competent judicial authority, and was authorized to sell personal property, lease lands, take charge of all moneys paid in on the capital stock, or accruing from sales of property, to invest the surplus capital in the purchase of lands, or in the creation of mills and machinery, and in the management and improvement of the same, to sell and convey town lots belonging to the company, and was required to make semi-annual dividends of the proceeds or nett profits of the business of said company among the several partners

or stockholders, and generally to transact all the affairs and concerns of the company, in such prudent, discreet and proper manner as would best subserve the interests of the company, and render the property productive.

That the said Neshoto Lumbering Company being thus constituted and organized, the said Charles Durkee became the proprietor of sixty shares of the capital stock thereof, for which he paid to the trustee the sum of ten dollars for each share, as required by the said articles of association, and for which he received certificates of stock from the trustee, in pursuance of said articles of association.  That said certificates are by said articles, declared to be assignable, and transferrable by endorsement, and such assignment and transfer, conveys all the rights of the original holder to such assignee, provided he should sign the said articles.  That the complainant by assignment of the certificates thus issued to the said Charles Durkee, made in due form, became the owner of the said sixty shares of the capital stock of the said company, upon which said shares all the installments provided in said articles to be paid, have been duly paid; that he has signed and sealed the said articles as therein provided, so that to all intents and purposes, he was one of, and is one of the co-partners in said company, and is entitled to all the benefits which might or could have accrued to the said Charles Durkee, as one of the original shareholders or partners therein.

That in pursuance of the provisions contained in said articles of association (for more particular description of which said articles, the complainant respectfully refers to the copy thereof on record in the register's office, in Brown county, vol. L, pages 262, 263, 264, 265 and 266,) the said Albert G. Ellis entered upon the duties of trustee, and he is informed and believes, well and faithfully transacted the business of said company, until on or about the 29th day of July, A. D. 1837, when one Henry Stringham (whom the complainant prays

6        WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

may be made one of the parties defendant hereto,) late of said county of Brown, having purchased by assignment several shares of the stock of said company, and signed and sealed said articles, and thereby become one of the co-partners or members of said company, was by the stockholders of said company, duly elected the trustee of said company, in the place and stead of said Ellis, who at the same time resigned.

That upon the election of said Henry Stringham, as trustee of said company, the said Albert G. Ellis (and Pamelia H. Ellis, wife of Albert) conveyed by deed, bearing date on or about the 29th day of July, A. D. 1837, the three undivided fourths of the lands hereinbefore described, with the express clause or stipulation therein mentioned and contained, that he, the said Stringham, should have or hold the lands therein conveyed, to him and his successors in office, (as trustees of said Neshoto Lumber Company,) and assigns forever, to and for the use and benefit of said company and association, and in the manner and form specified and set forth in certain articles of association (being the same indenture and articles hereinbefore referred to,) entered into between the members and stockholders of said company, for the government thereof and not otherwise.

That at the time of the execution of the said conveyance to said Henry Stringham as aforesaid, the said lands had thereon erected, a saw mill, a farm house, and the necessary out-houses and appendages, that as he, the complainant is informed and believes, there was a large number of pine logs lying at said mill, the property of said company, and large quantities of personal property upon the premises, consisting of cattle, swine, farming utensils, implements of husbandry, and mechanic tools, the property of said company, and that there was a large amount of money, being and constituting the part unexpended of the capital stock of said company before that time paid in, and received from sales of town lots,

## WISCONSIN REPORTS. 7

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

and other property of said company, all of which said property and money was turned over and delivered to the said Henry Stringham, as trustee of said company. That the said Henry Stringham, having entered into possession of the premises, and the goods and effects of said company, proceeded to transact the business of said company by himself and his agents, as the trustee, and ever acknowledged and avowed himself as the lawfully appointed trustee of said company. And the complainant is informed and believes that the said Henry Stringham has, from the time of his entering upon the said trust, up to the time of filing of this bill of complaint, realized divers large sums of money from the leasing and using the said lands hereinbefore described, and from the timber, which, by him and his agents, has been cut down and carried away from the said lands, and from the lumber which by him and his agents, has been cut at said saw mill from logs taken from the said lands; and that with the funds of the said company, he has purchased goods, wares and merchandize, cattle, swine and other personal property, which he has again disposed of at great profit and advantage; and that he has sold and conveyed a large number of the town lots in the town of Neshoto, laid out upon the said lands, in pursuance of said articles of association, at great prices, and received in payment thereof divers large sums of money or other articles of value. And that generally in the management and transaction of the business of said company, by himself or his agents, he has from time to time received and realized therefrom large sums of money and other effects; of which said sums of money and effects it is made the duty of said trustee in and by said indentures and articles of association hereinbefore referred to, to account with said company, and the co-partners and members thereof, and out of the proceeds of said business to make and declare dividends at stated periods, among the several co-partners or

8 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

shareholders in said company, in proportion to the shares by them respectively held; but the said Stringham, instead of complying with the terms of the trust so reposed in him, hath as the complainant is informed and believes, applied and converted all the money and effects realized from the said business, as aforesaid, to his own use. And the complainant further states that he has respectfully applied to said Stringham for an account of the said trust property received by him as trustee as aforesaid, and of his application thereof, and of the business operations of said company, so conducted as aforesaid, by him as trustee.

And further charges that the said lands, were conveyed to said Henry Stringham as aforesaid, as agent of the said Neshoto Lumbering Company, and to and for the use and benefit of said company, and not otherwise, in and by the said deed of conveyance, executed by said Ellis and his wife, on the 29th day of July, 1837. And that, in pursuance of said design to cheat and defraud, as the complainant believes, the said company and the members and partners thereof, and the complainant as one of them, the said Henry Stringham, executed and put on record, on or about the 17th day of January, 1840, a deed purporting to convey all the three-fourths of the said lands to the said Joseph Stringham, thereby pretending to vest the title to said lands in the said Joseph Stringham, although, as the complainant expressly charges, the said Henry Stringham had no other right or title thereto, than as one of the partners in said company, and the agent thereof, nor could he execute any conveyance of said lands except in pursuance of the said trust, and the execution thereof, which was, and is well known to the said Joseph Stringham. And the complainant further charges, that the said deed, executed as aforesaid by said Henry to said Joseph Stringham, is fraudulent and void, and that the same was executed and delivered (if delivered at all, which the com-

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

plainant does not admit or believe,) by and between the parties thereto, as the complainant believes and therefore charges, for the express purpose of defrauding the partners in said company, and the complainant, as one of them, and that the same ought to be declared void by this honorable court.

And that the said Henry Stringham be removed from his said trust, and that another be appointed in his stead, by this honorable court, to act as trustee or agent of said Neshoto Lumbering Company; and also that the said defendants be restrained from making or executing any conveyance or instrument for the conveyance or incumbrance of the lands hereinbefore described, or any portion thereof, and from selling or otherwise disposing of, by themselves or their agents, all or any portion of the personal property situated upon said premises, and from receiving any sum of money or security for the payment thereof, or other article of value, in payment of any demand due on account of any sales of property belonging to said company, heretofore made, and from doing any other act or thing, for or on account of said company. And that upon the final hearing of this bill of complaint, the injunction may be made perpetual, and that the defendants may be decreed to release all their right, title and interest (other than as shareholders in said company,) of, in and to the premises hereinbefore described, and the appurtenances, to the trustee so to be appointed; and that the said Henry Stringham may be decreed to pay over and deliver all moneys, notes of hand, securities, books, vouchers, and other papers belonging, or in any manner relating to the business of said company, or received by him or his agents in conducting the business operations of said company, over and above such sums as may have been legally and properly expended by him in pursuance of the powers vested in him as trustee or agent of said company, and for further relief.

Service was made by publication; and on the 27th day of

May, 1844, a decree *pro confesso*, was entered, providing for a reference to a master, to take certain proofs, and to state an account, &c.

On the 14th October, 1844, Henry T. Stringham filed a petition for leave to appear and answer, and on the 18th October he filed his answer as follows:

That he admits that on or about the first day of February, in the year of our Lord one thousand eight hundred and thirty-seven, one Albert G. Ellis, of Brown county, in the Territory of Wisconsin, was seized of and possessed the undivided three-fourths of certain premises, as set forth and alleged in said bill of complaint; and this defendant further answering saith, he admits said lands were covered or had thereon a large quantity of pine timber, and that for the purpose of improving the said lands and the water power thereon and manufacturing lumber, the said Ellis and one Ford did enter into co-partnership or articles of association, at the time and in the manner alleged in said bill of complaint, and for a more particular account of the stipulations, conditions and terms of said co-partnership this defendant prays leave to refer to the articles of said association, when the same shall be produced and shown in this honorable court.

That the capital stock of said company or association was to be fifty thousand dollars as set forth in said bill of complaint, but this defendant further shows to your honor, that at the time said association was formed, there was paid in of said capital stock the sum of ten thousand eight hundred and twenty dollars; that by the provisions of said articles of association, the trustee or person having charge of the interests of said company or association was authorized from time to time to make calls of the capital stock, not exceeding two dollars on a share at any one time, until the same was all paid in, to wit; the sum of fifty thousand dollars. And this defendant further answering says the whole amount ever paid

in by the stockholders of said association was three thousand six hundred and forty dollars to this defendant, and this defendant further answering says, that the said lands, owned and possessed by the said Ellis and Ford, were to become the property of said company, and constitute a part of the investments of the capital stock of said association as set forth in said bill of complaint; and this defendant further answering says, that articles of association were formed and entered into, and the said Ellis constituted trustee, and the said lands mentioned and described in said bill of complaint, were then and there, as the defendant believes, conveyed, or one-fourth interest therein, by said Ford, all of which will more fully appear by reference to said article of agreement, and the said deed from Ford and Ellis, to which, when produced and proved, this defendant prays leave to refer.

That the conditions under which said Ellis held the said property were those specified in said articles of association, and that he was to continue in office until the objects of said association were accomplished, unless removed as provided in said articles of association, and that he had during the continuance of said trusteeship, all the powers as set forth in said bill of complaint.

And this defendant further answering, says, he admits the said complainant became the proprietor of sixty shares of the capital stock of said company, upon which had been paid in the sum of ten dollars on each share, but this defendant denies that said complainant or any person for him has paid all the installments provided for in said articles of agreement, or that he, the said complainant, or any one in his behalf, has paid all the installments which have been called in by the trustee under said articles of association, but on the contrary this defendant shows that the trustee for the time being was authorized by the said articles of association, to call from time to time until the capital stock was all paid in, upon the

holders to pay upon their several shares, such sum as might be demanded or required, provided not more than two dollars on each share should be demanded at any one time; that in pursuance of said power, and for the purpose of improving the said property, this defendant, after he became trustee, and in the month of May, eighteen hundred and thirty-seven, the precise day the defendant is unable to state, made four calls of the capital stock, of two dollars on each share, payable at different times, amounting in the sum total to four thousand dollars.

That said calls were made in pursuance of the authority in him vested, and in accordance with the directions contained in the said articles of association, hereinbefore referred to.

That the said complainant, in pursuance and in conformity with said calls of capital stock, paid up the whole amount thereof on fifteen shares of said capital stock held by him, to wit: the sum of one hundred and twenty dollars, but has from that time until the present wholly neglected and refused, and still does neglect and refuse, to pay the amount of said several calls or any part thereof on the remaining forty-five shares of stock, so claimed to be held by him, and this defendant further shows, that he relied upon the payment of said sums by said complainant, on the said shares, and the amount thereof was expended by this defendant as such trustee in anticipation of the payment of the same by said complainant, but the said complainant has refused and neglected to pay the same.

That he admits that he has acted as trustee of said association or company since the twenty-sixth day of April, eighteen hundred and thirty-seven, and that he was appointed in the manner provided by the said articles of association for the appointment of trustees, and this defendant admits that he had, prior to his appointment as trustee, purchased some of the stock of said company.

That he admits, the said Ellis did on his election as trustee or soon afterwards, convey to him as such trustee, all of the estate, right, title and interest held by him as such trustee, and that subsequently he did also convey by a quit-claim deed on or about the twenty-ninth day of July, one thousand eight hundred and thirty-seven, all of the interest he had in said lands and premises, as set forth in said bill of complaint.

And this defendant further answering, says, he admits that at the time he became trustee of said company, there was erected on the same a sawmill (in an unfinished state) a farmhouse and some of the necessary outhouses and appendages, that there was considerable personal property on said lands and premises, consisting of sawlogs, cattle, swine, farming utensil, implements of husbandry, and mechanic tools, and property of said company, but this defendant denies that there was any money belonging to said company, but on the contrary the said Ellis, former trustee for the said company, had invested the entire of the capital stock which had been paid in in lands, and was in debt for all of the personal property, mill, farmhouse, and outhouses, which there was in possession of the trustee, or upon said lands; and this defendant further says, that when he was appointed trustee, he advanced in behalf of said association such sum as was necessary to close the accounts of the former trustee, A. G. Ellis, for moneys advanced by him for the said company, which sum amounted to four hundred and fifty-eight dollars and fourteen cents, as appears by the books and papers in the hands of this defendant.

That he admits that he has acted as trustee of said company or association since the time he was so appointed, that he has managed the said business to the best of his ability during the said time, and for the amount of money he has received, and the manner the same has been disbursed and paid out, he prays leave to refer to the annexed schedule

marked " N ", and which is made a part of this answer and is as full and accurate an account of all the disbursements made by this defendant, as well as an account of all the moneys received and the sources from whence they were received, as this defendant is able to make. And this defendant further answering, says, that the reason that he has never declared any dividends arises from the fact that nothing has ever come into his hands from which a dividend could be declared.

That he admits he did on the seventh day of January, one thousand eight hundred and forty, convey to his brother the undivided three-fourths part of said premises, that the same were conveyed to Joseph Stringham for the purpose of securing to him sums of money which he has advanced to this defendant, and without any intention to defraud. And this defendant further answering, submits to this honorable court whether a trustee can be appointed, otherwise than is appointed, provided for in said articles of association. And this defendant further answering, denies that he has refused to account for the money and property received by him, but on the contrary is now and ever has been ready and willing to account for the same; to exhibit to said complainant the books of accounts belonging to said company, so far as the same are now in the possession or under the control of this defendant. And this defendant further says, that sometime in the year one thousand eight hundred and forty-one, a writ of injunction was issued by your honor, and one Charles C. P. Arndt appointed receiver by this honorable court, the acts and doings of whom, and one Samuel C. Chase, who was then in charge of the premises, this defendant is unable to give, further than may appear in said schedule " A ". And this defendant further says, that in the month of June, one thousand eight hundred and forty-three, the dwelling house on said premises, occupied by one Frederick Brocherdt, then in charge of said premises, together with all the books of ac-

count and papers, as this defendant is informed and verily believes, was destroyed by fire. And this defendant further says, that the said account herewith rendered, marked " A ", is as full and accurate an account as this defendant is able to render from his books.

On the 4th day of December, 1845, Harvey Durkee, on leave of court, filed his supplemental bill, making Wesley Truesdall and Ramsay Crooks defendants; in which after recapitulating the facts stated in the original bill, and the answer of Henry Stringham, states, by way of supplement, that before any proceedings were had in the cause, the said John P. Arndt, Chester Ford, A. G. Ellis, and all others of the stockholders in said company, except James D. Doty, did, as the complainant is informed and believes, assign and transfer all their right, title and interest, in and to the said lands and premises, and all their interest in said company to said Henry Stringham. And that the said James D. Doty sold, assigned and transferred, all his right, title and premises herein described, to Ramsay Crooks of the City and State New York, whom the complainant prays may be made a party defendant, by which said assignment and transfer the said complainant insists that the said partnership between the stockholders in said company was dissolved. And the complainant further states and shows that he is informed and believes, the said lands and premises, and such interest therein as was owned and held by said Henry was absolutely conveyed to the said Joseph Stringham, and that said Joseph Stringham has been declared a bankrupt, and all his interest and estate therein assigned and transferred by operation of law, to Charles Clark, an assignee in bankruptcy, and that the said clerk has sold and conveyed to one Wesley Truesdall, (whom the complainant prays may be made a part defendant herein,) all the right, title, interest, claim and demand of said Joseph, in and to the premises hereinbefore described.

That, as he is informed and believes, the said Ramsay Crooks and Wesley Truesdall are in equity seized in fee of all and singular the lands and premises hereinbefore described, as tenants in common, in the following proportions, that is to to say: the complainant owning sixty shares of the capital stock is entitled to six-fiftieths of said lands and premises,— the said Ramsay Crooks, as assignee of James D. Doty, owning fifty-three shares of the capital stock, is entitled to fifty-three five-hundredths of said land and premises, and the said Wesley Truesdall, owning three hundred and eighty-seven shares of the capital stock is entitled to three hundred and eighty-seven one-hundredths of said lands and tenements.

And the complainant further shows, that he is desirous that a final settlement should be speedily made of said partnership business, and that a partition and division should be made of the said several parcels of land and premises among the several parties seized of and entitled as aforesaid, according to their respective estates therein or among such others as may hereafter be discovered to be the beneficiaries thereof, or in case parcels of such land cannot be divided among the owners thereof, as aforesaid, without prejudice to them, then that the same may be sold and the proceeds thereof divided among such parties according to their several and respective rights and interest therein. But the complainant is advised that no valid or effectual settlement of said business, nor partition or division or sale of such lands and premises, can be effectual without the aid and interposition of this court, wherefore the complainant has been advised to apply for aid and direction in the premises.

And that the rights and interest of the several partners therein, and their assignees or representatives may be judicially ascertained, declared and settled, by a decree of this honorable court, and that partition and division may be made according to the course and practice of the court, of the said

parcels of land and premises above described. And in case it should appear that partition cannot be made among the parties or their assigns without prejudice to some having an interest in such lands and premises, then that the same or some part thereof may be sold, and that satisfaction in money out of the proceeds thereof may be made to those who have a minor interest for equality of partition, according to the rights and interests of the several parties. And that said partnership may be declared to be dissolved from and after the        day of        , A.D.        , and that all such other and further proceedings may be had as agreeably to law and the course and practice of this court may be requisite and proper to render such partition and division effectual and valid in law, and to enable the several parties to have and to hold, in severalty, their respective shares, rights and estates therein, so far as partition in fact may be made. And that the complainant may have such further and other relief, &c.

May 27, 1847, the following amendment was filed :

At page 15, on line 31, after the word "trustee" insert, and the complaint further states and shows, that all the stockholders in said company, except James D. Doty and the complainant, have, as complainant is informed and believes, assigned and transferred all their right, title and interest in and to said lands and premises. and all their interest in said company to the said Henry Stringham and that such interest therein as the said Stringham acquired in and by said assignment and transfer, and subsequently conveyed to said Joseph Stringham, was assigned and transferred by operation of law (the said Joseph having been declared a bankrupt) to Charles Clark, an assignee in bankruptcy, and that the said Charles Clark has sold and conveyed the same to one Wesley Truesdail, whom the complainant prays may be made a party defendant herein ; that he is informed and believes the said

James D. Doty has assigned and transferred all his right, title title and interest in said company, and in the lands and premises hereinbefore described, to Ramsey Crooks, of the city and State of New York, whom the complainant prays may also be made a party defendant herein, by which said assignment and transfer the complainant insists that the said partnership between the stockholders in said Lumbering Company was dissolved.

That, as he is informed and believes, the said Ramsey Crooks, by Truesdail and the complainant, are in equity, seized in fee of all and singular, the lands and tenements hereinbefore described as tenants in common, in the following proportion, that is to say, the complainant owning sixty shares of the capital stock is entitled to sixty five hundredths (60-500) undivided of said lands and premises; the said Ramsey Crooks, as assignee of James D. Doty, owning fifty-three shares of the capital stock, is entitled to fifty-three five hundredths, (53-500) undivided of said lands and premises, and the said Welsey Truesdail, as assignee of the remaining stockholders owning three hundred and eighty-seven shares of the capital stock, is entitled to three hundred and eighty-seven five hundredths (387-500) undivided of said lands and premises.

That he is desirous that a final settlement should be speedily made of said partnership business, and that a partition and division should be made of the said several parcels of land and premises among the several parties seized of and entitled as aforesaid according to their respective estates therein or among such as may hereafter be discovered to be the beneficiaries thereof or in case parcels of said lands cannot be divided among the owners thereof, without prejudice to them, then that the same may be sold and the proceeds thereof divided among such parties according to their several and respective rights and interests therein.

But complainant is advised that no valid settlement of said business or partition or division or sale of such lands and premises can be made without the aid and interposition of this Court. Therefore the complainant has been advised to apply for aid and directions in the premises.

On the 7th of October, 1857, the Commissioner to whom the cause had been referred, reported, in substance, that the property was incapable of a division, and thereupon the court entered a decree, in which the interest of the parties was declared, as follows: Harvey Durkee, was declared to be the owner of 60-500; Ramsay Crooks of 53-500.; and Wesley Truesdail of 387-500, of the estate and property in controversy. A portion of the property, deemed incapable of partition, was ordered to be sold; and a partition was ordered of the remainder.

On the 3d of February, 1848, Joseph Stringham having filed a petition for leave to come in and answer; and his petition having been allowed, upon condition of his giving bond, with surety, to pay costs, &c., and said bond being filed and approved, filed the following answer:

This defendant admits that Albert G. Ellis and Chester Ford were seized of the lands in said bill mentioned, and did enter into the articles of association therein set forth, on the terms and for the purposes in said bill set forth, that said lands were to become the property of the Association, and said Ellis and Ford to receive therefor a proportional amount of stock in the same.

Admits that said Ellis was made trustee, as in said bill set forth, and did agree to hold his own interest in said lands as such trustee, and did receive, as such trustee, a deed thereof as set forth, for the purposes of said association. And this defendant further admits that the tenure of office powers and duties of such trusteeship, are correctly set forth in said bill.

Admits that Charles Durkee became proprietor of the sixty

20      WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

shares of said stock, as in said bill set forth, and that complainant has become owner of the rights of the said Charles Durkee in and to the same, but this defendant denies that the installments on said stock have been paid, but on the contrary avers that all but fifteen of the said sixty shares have become forfeited as hereinafter set forth.

And this defendant admits that the said Ellis did continue as such trustee until the 26th day of April, in the year 1837, but no longer. And this defendant admits that said Henry T. Stringham was appointed and acted as his successor in said trusts, and avers that said Henry became such trustee and entered upon said trust on said 26th day of April, and that said Henry owned several shares of said. stock, and was a partner in said association.

Alleges that by the said articles of association, the trustee aforesaid was authorized from time to time, until all the said capital stock should be paid in, to call upon the holders thereof to pay upon their several shares such sum as might be demanded or required, provided that not more than two dollars on any share should be paid at any one time; that in pursuance of said power and authority, and for the purpose of improving said property, said Henry T. Stringham, after he became such trustee, and, as defendant believes some time during the month of May, 1838, but at what particular time this defendant is unable to state, did make four calls, of two dollars each per share, and payable at four different times, amounting in all to four thousand dollars, which said call made it necessary for the owner of said stock held by complainants to pay up on each share the sum of eight dollars in the said four payments of two dollars each. And this defendant saith that said calls were regular and authorized, and that said complainant, in compliance with said calls, did pay as required the full amount thereof upon fifteen of the shares so held by him, but that upon the remaining forty-five shares no

payment has ever been made by complainant or any other person under any of said calls, but the said forty-five shares have, as the defendant avers, become utterly forfeited by reason of such non-payment.

Admits that at or about the time the said Henry T. Stringham became such trustee, the said Ellis and wife did convey to said Henry T. Stringham, all the estate and interest held by said Ellis as such trustee, and did afterwards, and on or about the 29th day of July, 1837, convey to said Henry all of his interest in said lands and premises as set forth in said bill of complaint.

Admits that when said Henry became such trustee there was erected on said lands a sawmill in an unfinished state, a farm house and some of the necessary outhouses and appendages; that there was considerable personal property on said lands and premises, consisting of sawlogs, cattle, swine, farming utensils, implements of husbandry, and tools, the property of said company. But this defendant denies that there was any money belonging to said company, but avers, on the contrary, as he is informed and believes, that said Ellis had, while trustee, invested in lands all of said capital stock paid in, and was in debt for all or nearly all of the other property of said company in his possession or upon said lands; and this defendant saith that when said Henry assumed said trust, he, as defendant is informed and believes, and as appears from the accounts of said trustee, actually advanced to said Ellis for said company such sum as was necessary to close the accounts of the former trustee, said Ellis, amounting to four hundred and fifty-eight fourteen one hundredth dollars, besides paying other large sums in discharge of the debts contracted by said Ellis as such trustee.

Admits that said Henry T. Stringham did act as such trustee and perform the duties of his said office, and this defendant admits that said Henry did, as such trustee, receive a cer-

tain sum of money from various persons, but this defendant, from his information and belief, denies all the frauds and malpractices imputed in said bill to said Henry T. Stringham, and avers that said Henry managed said trust honestly and faithfully; and this defendant refers to Schedule A, attached to and forming a part of the answer of said Henry in this cause, for a full and fair statement of the trust and partnership account of said Henry as such trustee, which this defendant believes to be correct in every particular, and this defendant avers that so far from said Henry being indebted to said company ; said company was and is indebted, as appears by said trust account, in a large balance, which now belongs to this defendant to whom the same is assigned by said Henry.

Admits that said Henry T. Stringham did, on or about the seventeenth day of January, eighteen hundred and forty, convey the undivided three-fourths of said lands to this defendant. But this defendant denies that said conveyance was fraudulent or intended to defraud said company. On the contrary this defendant shows that said Henry T. Stringham was in the habit of borrowing considerable sums of money, and that said conveyance was made to secure this defendant for such sums as might be then or thereafter due him from the said Henry, and was intended to, and this defendant submits, did operate as a valid conveyance in equity of such interest as said Henry T. Stringham had therein, and did not in any way violate said trust, inasmuch as it was given in his individual capacity, and he had an individual interest as a partner of said association. And this defendant denies that he has claimed or pretended that said conveyance operated to pass said land free from said trust, but insists that it did convey all the right of said Henry, in said lands as a partner, and also a creditor of said company, that said lands were, and are liable for the debts of said company, due to the said Henry as trustee, and to the defendant as his grantee, and the surplus,

after paying said debts, to distribution among the stockholders who have not forfeited their stock.

Admits that all the stockholders in said company, except James D. Doty, and complainant, did assign their stock to said Henry T. Stringham as in said amended bill set forth. But this defendant denies that the same was conveyed to him by said Henry, prior to the bankruptcy of this defendant, or that prior to his bankruptcy, this defendant had any interest in said stock, or in said lands except under his said equitable mortgage. And this defendant saith, that at the time of said bankruptcy, there was due to this defendant from the said Henry, the sum of five hundred dollars, and that this defendant in his schedule in bankruptcy, set forth fully and specifically, the nature and amount of said claim; and this defendant admits that said claim passed by operation of law to the assignee in bankruptcy, and was by him sold and assigned to the defendant, Wesley Truesdail, as stated in said bill. And this defendant avers that said Truesdail had full notice from this defendant's said schedule in bankruptcy, what and how large said claim was, and is entitled to no greater interest than was therein set forth. And this defendant submits that if said deed from said Henry T. Stringham to this defendant was void, then said Truesdail's interest under the same fails, and is also void.

Denies that the said James D. Doty, has assigned all of his right, title and interest in said company to Ramsey Crooks, or that such transfer if made, would dissolve said company, in as much as its stock was by the articles of association made transferable. But this defendant avers, that all the interest which said Doty had in said company, or its property, consisted of fifty-two shares, that is to say, of fifty-two five hundredths of its capital stock, of which amount he did, as this defendant is informed and believes, transfer thirty-two shares, and no more, to one Joseph Rolette, now deceased,

and which are now the property of said Ramsey Crooks, and the remaining twenty shares have been sold to Henry T. Stringham, ten shares having been sold him by said Doty, prior to the purchase of his interest in said lands by this defendant, hereinafter set forth, and ten shares having also prior to that purchase, been bought by him, of one James Schermerhorn, who purchased the same of said Doty.

Alleges that said Ramsey Crooks has no interest in said company, beyond thirty-two shares. And this defendant submits that the shares of said Crooks, and of complainant, are liable to their proportion of the debts of said company for the advances and credits of said Henry T. Stringham, as trustee. Avers that said shares of said Crooks were forfeited by reason of non-payments of assessment made on the same, as hereinbefore set forth, by said Henry as trustee of said company.

And this defendant further answering saith, that in the month of June, 1844, the said Henry T. Stringham and wife sold and conveyed to this defendant, for a good and valuable consideration, all of the interest of said Henry in the lands of said company ; such sale and conveyance, as this defendant maintains, embracing all the claims of said Henry on said land, both as a shareholder, and for the indebtedness of said company to him, and including the undivided fourth interest which was not conveyed by his former deed ; and this defendant still holds all of said interest.

Further answering says, that some time in the early part of the year 1845, the said Wesley Truesdail, by his deed, duly executed and recorded, did expressly state and acknowledge that he held said lands only to secure the payment of certain debts in said deed set forth as due from said Henry T. Stringham to the Bank of St. Clair, and by which said deed said Truesdail agreed to convey to this defendant said lands upon the payment of said indebtedness. And this defendant saith

that, as he is informed and believes, the said Henry T. String-
ham, as trustee aforesaid, had given a mortgage to said
Truesdail, in the year 1840, for five thousand dollars, but this
defendant is informed and believes that said mortgage was
long since paid in full.

Denies that said Wesley Truesdail, Ramsey Crooks and
complainant are either legally or equitably seized in fee of
the lands in said bill, in the proportions set forth therein;
but this defendant sets forth and avers the several interests
therein to be as follows :　The legal title to the whole of
said lands is in this defendant, subject, however to the
right of said company, as follows:　First, the defendant
claims that the balance due said Henry T. Stringham,
and which is now the property of this defendant, shall
be satisfied out of the property of said company, in said lands,
said debt having been incurred in the business of said compa-
ny.　Secondly, that the other debts, if any, be paid.　Thirdly,
that said property be divided among the stockholders of said
company, according to their interest therein, namely :　To
the complainant, fifteen five hundredth parts, being the num-
ber of shares which he has not forfeited by non-payment of
assessments, and the balance to this defendant, the shares of
the said Ramsey Crooks having been forfeited by non pay-
payment of assessments; the mortgage interest of said
Truesdail being five hundred dollars, and interest being first
satisfied out of the undivided three-fourths of the defendant's
interest.　And this defendant submits that no other partition
or sale will be just or equitable, or in accordance with the
rights of the parties.　And this defendant is ready and wil-
ling to convey to the parties entitled, their shares in said
company's lands, at any time when authorized to do so ; and
refers to the said answer of the said Henry T. Stringham, for
a more particular statement of said account; and this defend-
ant submits that said Henry is a necessary party to this suit,

without whom no decree can be rendered therein, and avers, that as he is informed and believes, this suit has been discontinued against said Henry—by reason whereof, and so long as said Henry is not a party, said complainant is not entitled to any relief ; and this defendant prays the same benefits as if he had pleaded the same, &c., and denies all fraud, combination, &c.

On the 1st of June, 1848, Joseph Stringham filed his cross bill against Harvey Durkee, making Wesley Truesdail, Ramsey Crooks, Henry T. Stringham, Isaac Taylor and Frederick Borchardt, defendants, as follows:

That on or about the first day of February, in the year eighteen hundred and thirty-seven, Albert G. Ellis, Chester Ford, John P. Arndt, James D. Doty, Charles Durkee, and others, associated themselves together into a co-partnership called the Neshoto Lumbering Company, the capital stock whereof was declared to be fifty thousand dollars, divided into five hundred shares, of one hundred dollars each, in which co-partnership or company, it was provided that any person might become a member by signing the articles of association aforesaid, and paying in to the trustee of said company, (to whom was committed the entire management of its affairs,) the sum of ten dollars on each and every share subscribed by him. And it was further provided that said trustee might, at any time before said capital stock was all paid in, call for such assessments on the same as he should see fit, provided that no more than two dollars per share should be made payable at any one time. And it was further provided that the said stock should be transferable, and render the purchaser thereof entitled to all the rights to which the original holder was entitled by reason of his ownership of any portion of said stock. And your orator further shows unto your honor that the object of said association was to improve and make use of the lands, and water power on the

same, hereinafter set forth, by making lumber of the pine wood growing on said lands, and for that purpose erecting mills to be worked by the said water power. That the said lands are situate on and near a certain stream called the Twin river, in said Territory of Wisconsin. That the title to the same was at the time aforesaid vested in the said Albert G. Ellis and Chester Ford, the former owning three-fourths and the latter one-fourth of the same; and that said lands are described as follows, to wit: [Describing the lands mentioned in the original bill.]

That as he is informed and believes, that the said Albert G. Ellis was appointed trustee of said company, and it was agreed that the said Ellis and Ford should contribute said lands at so much as they were worth, unto the capital stock of said association, and receive a corresponding number of of shares therein, and the said Ford did accordingly convey to the said Ellis as trustee aforesaid, his said undivided interest of one fourth of said lands, and the said Ellis agreed to hold his own undivided three-fourths of said lands in trust for the said association, and the said Ford and Ellis received said stock and became members of said association.

That by the articles of said association, it was provided that the said trustee should continue in office until the objects of his trusts were accomplished, unless he should sooner die, resign, or be removed by a majority of the stockholders, or by competent judicial authority; and was authorized to sell personal property, lease lands, take charge of all moneys of said association, and invest the surplus capital in lands, or in the erection of mills and machinery, and the management and improvement of the same, and to sell and convey town lots belonging to said company.

That the said Ellis did continue in office as such trustee until on or about the twenty-sixth day of April, in the year eighteen hundred and thirty-seven, when Henry T.

Stringham, a brother of your orator, was appointed in his place and became such trustee, and has never been removed from said office, nor resigned the same. And your orator shows that the said Henry was then a proprietor of a considerable proportion of the stock of said association, and a member thereof.

That at the time the said Henry assumed said trust, as he is informed and believes, there were erected on said premises an unfinished sawmill, a farmhouse and some necessary outbuildings, that there was also a considerable amount of personal property on said lands and premises, consisting of sawlogs, cattle, swine, farming utensils, implements of husbandry and tools belonging to said association, but there was no money belonging to said association, but the same was in debt for much of said personal property; and that said Henry when he assumed said trusts, was obliged to and did advance so much money as was necessary to clear the accounts of said former trustee, amounting to the sum of four hundred and fifty-eight dollars and seventeen cents, besides paying other large sums in discharge of the debts of said company, created by said Ellis as such trustee.

That the said Henry T. Stringham, under his said authority as trustee did, as he is informed and believes, after he became invested with said trust, and sometime in the month of May, eighteen hundred and thirty-seven, regularly and lawfully make four calls of two dollars each per share on said stock, payable at four different times, and that said Charles Durkee, or some one else owning said stock, did pay to said trustee the amount of said installments, upon fifteen shares of said stock, but upon the said forty-five remaining shares none of such assessments so made by said Henry were ever paid, and said forty-five shares became thereby forfeited, and that upon the thirty-two shares now held as above set set forth

WISCONSIN REPORTS. 29

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

by Ramsay Crooks, none of such assessments have been paid, and they also have become forfeited.

That on or about the fourth day of August, in the year eighteen hundred and forty-three, the said Harvey Durkee filed his bill in this court against your orator and said Henry, claiming to be the owner of said sixty shares, and that the same were free from all assessments, and praying an account of said trusteeship, and for the appointment of a new trustee, and that your orator and said Henry should be compelled to release to such new trustee all of their interest in said property except as shareholders, and be enjoined from selling or encumbering the same. And your orator shows that said Henry did put in a full and perfect answer to said bill with an account as prayed ; that no replication was filed to said answer, as your orator is informed and believes; and that subsequently said suit was discontinued against the said Henry.

That afterwards, to-wit: on the twenty-second day of May, eighteen hundred and forty-seven, certain amendments were made to the said bill, setting forth in substance that all of the stockholders of said company, except James D. Doty and complainant, had assigned their interest to said Henry T. Stringham, who had assigned the same to your orator, and that the same had been assigned by virtue of said bankruptcy proceedings, and became the property of Wesley Truesdail, and that said Doty had assigned all of his said interest and stock, including twenty additional shares which belong to your orator, to said Ramsey Crooks, and claiming that said partnership was thereby dissolved, and setting forth that said Ramsey Crooks, Wesley Truesdail and Harvey Durkee were entitled to the whole of the property of said association, to-wit : the said Crooks to fifty-three five-hundredth parts, and the said Truesdail to three hundred and eighty-seven five-hundredth parts, and your orator shows that said amendments prayed a partition and sale of said property, and that the

same might be divided, or the proceeds thereof might be divided as aforesaid, among the said pretended owners.

That instead of the interests in said lands and premises being, as in said amendment set forth, the same are as your orator has hereinbefore stated them; the said complainant, Harvey Durkee, owns fifteen shares, or 15-500 parts, and your orator the remainder; and he claims that the whole of said property is liable for the payment of his said claim, assigned as aforesaid by Henry T. Stringham, before any distribution can be made of said stock among the stockholders. And that the interest which the said Truesdail acquired under said sale in bankruptcy, was no more than a mortgage interest of five hundred dollars, which has been more than paid, as hereinafter stated.

That, as he is informed and believes, the amendments were filed, and said discontinuance entered against said Henry T. Stringham for the purpose of defrauding your orator by collusion of said Truesdail and Harvey Durkee, and said Crooks; and shows and charges that on the very day when said amendments were filed, and before any proceedings were had to bring said Henry or your orator to answer said amended bill, a decree was procured, to be entered by false and fraudulent representations, taking said bill as confessed, and in October following a further decree, ordering a disposal of said property to be made by partition sale, for the benefit of Durkee, Crooks and Truesdail, in the proportions set forth in said amendments, when, as your orator charges, they well knew, and especially the said Truesdail knew, that said decrees were a great and manifest fraud to your orator.

That the said Truesdail has always had full notice of the nature of his claim, and your orator submits that the said Truesdail was fully bound by the statement and explanation of your orator in his said schedule in bankruptcy, and further submits that his assignment in bankruptcy could not in law

or equity convey any greater interest than was owned by your orator.

That no cause appeared from said bill of complaint as amended, for the dissolution of said partnership, but your orator is willing and consents that the affairs of said association be closed by a payment of its debts and such distribution of its property as is just and equitable.

That the said Wesley Truesdail, after purchasing the said claim or interest of said bankruptcy sale, and some time in the year one thousand eight hundred and forty-three, did obtain possession of the said premises, and has continued in possession of the same until he disposed of his interest, as hereinafter set forth. And that being thus in possession, the said Truesdail set up a claim to hold the same as security, not only for said five hundred dollars, but for all indebtedness which was owing by the said Henry T. Stringham to the Bank of St. Clair, an institution doing banking business in the city of Detroit, and said Truesdail executed during the early part of the year eighteen hundred and forty-five, an instrument in writing, reciting such claims, and also agreeing to deed said lands to your orator upon payment of the amount of said debt in bills of the Bank of St. Clair, which said instrument is duly recorded.

That the said Henry T. Stringham, in his capacity of trustee as aforesaid, did execute to said Truesdail, in the year eighteen hundred and forty, a mortgage in the sum of five thousand dollars, which mortgage was, as your orator is informed and believes, and so charges, with a certain note of said Henry accompanying the same, given without any valuable consideration paid to said Henry or to the said association, but as a collateral security for a certain debt due to the Bank of St. Clair, from the Bank of Wisconsin, an insolvent bank formerly doing business at Green Bay, Wisconsin, and which said debt had been due for a long time previous to the

making of said mortgage, and was secured by certain other notes more than sufficient to pay said indebtedness, and which notes have been collected by said Bank of St. Clair, and by said Truesdail for said Bank, of which he was cashier, and that said debt has been so paid and discharged, as your orator is informed and believes, and so charges the fact to be.— And your orator further shows that the said Truesdail and the said Bank of St. Clair have neglected to file any claim with the receiver of the Bank of Wisconsin, or to take any other step to collect the said five thousand dollars, or any part thereof from the said Bank of Wisconsin, and that the same is now utterly uncollectable and valueless, as your orator is informed and believes, and that neither the said Truesdail nor the said Bank of St. Clair had any claim against said property or against said Henry T. Stringham, at the time of the making of said mortgage, and for a long time afterwards, other than as above described, and that said mortgage is utterly void, and the debt to secure which it was created, was paid and discharged many years since, but that no other mortgage or charge was ever made on said lands by said Henry, except as above described as made to your orator.

That the said Truesdail never pretended, as your orator believes, to hold, or held the said lands under any title except the one so purchased as aforesaid from the assignee in bankruptcy of your orator, but claimed the right to hold the same under said purchase, for the purpose of such security; but your orator shows and insists that said title comprehends nothing more than said five hundred dollars mortgage interest, and that the same cannot cover anything more than was intended and agreed at the time the same was created.

That he is informed and believes, the rents and profits of the said premises while in said Truesdail's possession, amounted to a sum far exceeding said Truesdail's legal or equitable claim on said property, and that said Treusdail is bound and

ought to account for and pay over to said company the entire undivided fourth of the rents and profits of said land and property, and to account for and pay over the surplus of the undivided three-fourths of said rents and profits over and above his said mortgage lien.

That he is informed and believes, the said Truesdail has committed waste upon said property to an amount far exceeding his claim on the same, and has thereby depreciated the value of said property to a great extent.

That the said Truesdail's claim as urged, and pretended by him against said Henry T. Stringham, is the sum of twelve thousand five hundred and eighty-two dollars, payable in notes of the said bank of St. Clair, which are worth, as your orator is informed and believes, about twenty cents on the dollar; and your orator shows and insists that, as he is informed and believes, the rents and profits of said property, while in said Truesdail's possession, amount, with the waste committed by him, to a sum exceeding his aforesaid claim, even if the same were allowed, which your orator insists, ought not in justice or equity to be done. And as he is informed and believes, that the said debt is barred by the statute of limitations.

That as he is informed and believes, a large amount of said claim of twelve thousand five hundred and eighty-two dollars is made up of demands which the said Truesdail did not pretend to hold as a claim against said property, for, because previous to its sale and conveyance to your orator as aforesaid, and amongst the rest are a certain claim against a firm styled Chester & Stringham, which it was not agreed between the said Henry and the said Truesdail, previous to such sale, and previous to the knowledge of said Truesdail, that such sale and conveyance had been made, should be a lien upon said land and premises, and certain other claims for moneys advanced to said Henry after the said Truesdail

knew of the said sale and conveyance of the said lands to your orator, and certain illegal and usurious charges of compound interest and exchange or commission, and other unjust charges, all of which are included in the present claim, made by the said Truesdail or Isaac Taylor against said property.

That at the time the said Henry assumed said trust, said Ellis did transfer to said Henry all of said Ellis' interest as such trustee, and did afterwards and on or about the 29th day of July in the year 1837, convey to said Henry all the interests held by said Ellis individually in said lands and company.

That the said Henry did continue in the execution of said trust until some time in the year eighteen hundred and forty-three (1843) when he was enjoined from acting as such trustee by an order from this court in a certain cause therein pending between Harvey Durkee, as complainant. and this complainant and said Henry as defendants, which will be more particularly referred to hereafter. And your orator shows that the said Henry, as such trustee, managed the affairs of said association, as your orator is informed and believes, with prudence and honesty, and advanced large sums of money for the purposes of said association and the improvement of said property, far beyond the amount of money received by him as such trustee: and that at the time of the issuing of said injunction, the said company was indebted to him in the sum of eight thousand four hundred and ten dollars and thirty-six cents, no part of which or the interest thereon, has ever been paid by said association, but the whole amount still remains due and unpaid.

That on or about the 17th day of January, in the year 1840, the said Henry T. Stringham did convey to your orator, by deed absolute, but for the sole purpose of securing such sums as were then or should thereafter be due your orator, the undivided three-fourths of the interest of said Henry in

said lands, whereby your orator acquired an equitable mortgage interest in said Henry's undivided property in said lands to the amount of said indebtedness. And your orator shows that, being embarrassed in his circumstances, your orator did in the summer of the year 1843, assign to Charles E. Clarke, an assignee in bankruptcy, all the property of your orator, and did obtain, by due course of law, a discharge from his debts. And your orator shows that there was at the time due to your orator, from said Henry, and secured by said mortgage security, the sum of five hundred dollars and interest, and your orator set forth fully in his said assignment or schedule, the nature of said claim and of said transfer, with a full explanation thereof, and the amounts of the same therein stated in round numbers at $700, which included the back interest; that at the time of making said schedule, your orator was uncertain of the precise amount due, and estimated the amount at the highest sum. And your orator shows that one Wesley Truesdail became the purchaser of said interest and had full notice of the nature and amount thereof, and became entitled by said purchase to the said mortgage interest of five hundred dollars and no more, and that at the public sale of the assets of this complainant by his said assignee in bankruptcy the amount of his claim against said land was stated to be five hundred dollars and interest from the summer of 1841.

That subsequent to the said discharge of your orator, and some time in the summer of the year 1844, the said Henry T. Stringham and Sarah, his wife, did sell and convey to your orator, absolutely and for a full and valuable consideration, all the property of said Henry T. Stringham, in said land, as well as the undivided fourth of the same, not before mortgaged as the three-fourths mortgaged to your orator, and which mortgage was assigned as aforesaid to said Truesdail, which sale as your orator avers, embraced as well all the prop-

erty of said Henry in said lands, as a stockholder of said company as all the said claim of said Henry against said company. And your orator shows that he still holds all of the interest assigned as aforesaid and conveyed to him in said property, stock and indebtedness, which said indebtedness incurred to said Henry as trustee in the care of said property, is a lien on the same prior to all others whatever, under the conditions of said association, and your orator shows that at the time of the said sale and conveyance to your orator by the said Henry, he, the said Henry, owned all of the stock of said company, except ninety-two shares, of which thirty-two were originally owned by James D. Doty, and sixty by the said Charles Durkee. And your orator shows that he is informed and believes that the said James D. Doty transferred said thirty-two shares to one Joseph Rolette, now deceased, by whom they were transferred to Ramsey Crooks, who now claims the same, and that the said thirty-two shares have been forfeited, as below set forth.

That, as he is informed and believes, the said Charles Durkee did transfer his said sixty shares to said Harvey Durkee, who still pretends to hold the same, but your orator charges that if the said Harvey is entitled to hold any of the same, he owns no more than fifteen shares, and that the remaining forty-five shares have been long since forfeited, as herein set forth.

That as your orator is informed and believes, the said claim of the said Bank of St. Clair against the said Chester & Stringham was secured by an assignment to the said Truesdail, he being cashier of the said Bank of St. Clair, of all of the assets of the firm of Chester & Stringham, supposed, at the time to be sufficient to pay their debt to the Bank of St. Clair, as your orator is informed and believes, and that the said Truesdail has never closed or settled his trust under said assignment, but still holds said assets, and that the said Bank of St. Clair

## WISCONSIN REPORTS. 37

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

gave a voluntary discharge from said indebtedness to John Chester, a partner in said firm of Chester & Stringham, without the consent of said Henry.

That the said Truesdail held possession of said premises as aforesaid, through one Frederick Borchardt, whom your orator prays may be made a party to this bill. That, as he is informed and believes, the said Henry T. Stringham did, some time in the summer of 1844, place certain accounts and effects in the hands of the said Borchardt, then acting as agent for the said Truesdail, for the purpose of being converted into money and paid to your orator, and that the said Borchardt has converted the same to the amount of more than one hundred and forty-four dollars to the use of the said Truesdail, as his agent in the management of said property and that no part thereof has been paid or satisfactorily accounted for to your orator.

That at the time of the taking possession of the said premises and lands by the said Wesley Truesdail, in the year 1843, as aforesaid, the said Frederick Borchardt was in possession of the same as agent of the said Henry T. Stringham, trustee of the Neshoto Lumbering Company, and not otherwise, and that the said Wesley Truesdail, by one Lewis Allen, his agent and attorney, did obtain possession of said premises by collusion, as your orator is informed and believes, with the said Borchardt, who, without any authority from said Henry, did give possession to the said Wesley, and did thereafter hold possession of the said property, as his agent, and not as the agent of said Henry, and that at the time of such collusion there was in the possession of the said Borchardt, as agent of the said Henry as aforesaid, a large amount of personal property used in the business of lumbering and farming, as well as a large quantity of lumber and logs, all of which have been, as your orator is informed and believes, used and converted by said Borchardt, as agent of said Truesdail, and that

no part of the value of the said property has ever been accounted for or paid to the said Henry, or to said company, neither has the same been credited to him on his said indebtedness to the bank of St. Clair, as your orator is informed and believes.

That he is informed and believes some time in the month of December, 1847, or at some other recent period, the said Truesdail conveyed all of his said lands and premises to one Isaac Taylor, with full notice and knowledge on the part of said Taylor of the disputed nature of said Truesdail's claim, and that said Taylor has obtained possession thereof, and makes the same unjust claims as said Truesdail, and your orator submits and insists that the sale made during the pendency of said suit cannot in any way affect the right of your orator, if the same is not utterly null and void, and that said Truesdail could not lawfully convey or give possession to said Taylor of the said lands and premises, which he claimed to hold only in trust for the Bank of St. Clair and your orator.   And your orator is informed and believes that the said Borchardt has seized and appropriated to his own use, a large amount of personal property belonging to said company, placed in his hands as such agent as aforesaid, under the pretended claim that there is a large sum of money due him as such agent, and that, acting as agent of said Truesdail as aforesaid, he has surrendered possession of said lands and premises to the said Taylor.

That, as he is informed and believes, the said Truesdail has assigned to the said Taylor the said mortgage of five thousand dollars so paid, discharged and void as aforesaid, and that said Taylor claims and pretends that the said mortgage is a valid and subsisting lien against said lands.   That the chief value of said lands is for lumbering, and that the destruction and waste of the timber on the same will greatly reduce the value thereof, and has reason to believe and does

believe that the said Taylor will proceed to make the most of his power out of said lands by cutting and selling the valuable timber and trees on the same; and has reason to fear, unless restrained by this Court, the said Taylor will proceed to cut off and dispose of the timber on said land and commit waste thereon, and the rights of your orator, as well as of said company, will be impaired and destroyed, and also that the said Taylor may proceed to sell or assign or attempt to foreclose and collect or otherwise to use the said mortgage of five thousand dollars, to the manifest wrong and injury of your orator, and that the said Borchardt will proceed to sell and convert to his own use or the use of others, the personal property belonging to said company in his possession.

And that said Truesdail, Borchardt and Taylor may be compelled to render a full statement of the rents and proceeds of said lands and premises, and of the timber and other property cut or disposed of, and may be decreed to pay over the same and apply the same to the payment of the parties entitled thereto, and that said claims of said Truesdail and Taylor may be decreed to be given up and cancelled, and they compelled to release the same and enter upon the records a discharge of said mortgage of five thousand dollars, and said Truesdail, Borchardt and Taylor, their, and each of their attorneys, agents and servants, may be enjoined from cutting any timber or disposing of any timber or other property on said lands and premises, and from doing any act of waste thereon, and from executing any incumbrance or transfer in any way touching said lands, premises, or property, and from assigning or selling or attempting to collect said mortgage of five thousand dollars, so given by Henry T. Stringham in the year 1840, as above set forth, and from selling or converting to their use or to the use of any of them any of the personal property belonging to said company.

And that your orator's claim against said association for the

over advances of said Henry T. Stringham, may be satisfied by a sale of sufficient property to pay the same, and that the rest of said property may be partitioned among the several owners in the proportion hereinbefore set forth, as the amount of their respective interests, if such partition be possible, and if not, then that the whole of said property be sold, and your orator paid his said claim, and also his said proportion of the balance, or that said property be all partitioned, being first appraised, and that your orator have sufficient property set off to him to pay his said claim in addition to his said proportion of the balance, and that your orator may have such other, or other and further relief as may be agreeable to equity.

To this bill Isaac Taylor and Wesley Truesdail filed their several answers on the 28th November, 1849, as follows:

The separate answer of Isaac Taylor, one of the defendants, to the bill of complaint of Joseph Stringham, &c.　*　*

That he never had any personal knowledge of the formation of the association, company or partnership called the Neshoto Lumbering Company, mentioned in the said bill of complaint, but this defendant has been informed and believes that such association, company or partnership was formed and entered into at about the time and substantially in the manner in that behalf mentioned in the said bill of complaint, and that articles of association of such company were made and executed by the persons, and substantially of the tenor and effect in that behalf mentioned in the said bill of complaint, but this defendant not having been privy thereto, prays leave to refer to the said articles of association, when produced, and prays the court to inspect the same.

That he is informed and believes that the said Albert G. Ellis, mentioned in the said bill of complaint, was appointed trustee of said company.

That he is informed and believes that the said company

WISCONSIN REPORTS. 41

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

became purchasers of the lands and premises in that behalf particularly mentioned and described in the said bill of complaint, and that the title thereof thereupon became vested in the said Albert G. Ellis, as the trustee of and for the said company, upon the trusts and for the purposes provided in that behalf in the said articles of association; but as to the particular conveyances and instruments whereby the title of the said lands and premises became so vested, this defendant for greater certainty prays leave to refer to the deeds of such conveyance and other instruments of title when produced, and prays the court to inspect the same.

That he is informed and believes that the said Albert G. Ellis did assume and enter upon his duties as such trustee as aforementioned, and did continue and cease to be the trustee of said company as in the said bill of complaint in that behalf is alleged, and that the said defendant, Henry T. Stringham, did thereupon become such trustee in his place, and did enter upon the discharge of his trusts in that behalf as in the said bill of complaint is in that behalf mentioned; but this defendant denies that the said Henry T. Stringham has never been removed from his office as such trustee, and denies that the said Henry T. Stringham is now such trustee.

That it may be true for anything which this defendant knows to the contrary thereof, that at the time when the said defendant, Henry T. Stringham, became such trustee, he may have been a proprietor of considerable stock in the said company, but whether he was so, or of how much or what proportion of such stock, this defendant does not know and cannot state, and asks liberty to leave the said complainant to make such proof thereof as he may be advised or able to make.

That he is informed and believes that the said lands and premises were purchased and held by the said company for the purpose of manufacturing the pine timber, growing there-

on, into lumber, and that the said company, their agents and servants carried on such business from time to time, and that there were on the said premises from time to time divers articles of personal property belonging to the said company, consisting of saw logs, lumber, cattle, swine, tools and implements; but what articles of personal property, or of what value were on the said lands and premises when the said defendant, Henry T. Stringham, entered upon his said trust, or whether there was then any money belonging to the said company, this defendant does not know, and is not informed, save by the said bill of complaint, and cannot answer as to his belief or otherwise, and as to whether the said Henry T. Stringham, when he assumed the said trust, was obliged to or did advance any or what money to any or what person, or whether the said company then became, or afterwards or ever was indebted unto the said Henry T. Stringham, on any account or for any amount whatever over and above the amounts received by him for the said company, or now is indebted unto the said Henry T. Stringham, this defendant says that he is a stranger to those matters, and cannot answer; but asks liberty to leave the said complainant to make such proof thereof as he may be advised or able to make.

That at or after the time of the appointment of the said Henry T. Stringham as such trustee as aforesaid, this defendant is informed and believes, that the said Albert G. Ellis, theretofore being such trustee as aforesaid, did convey to the said Henry T. Stringham the said lands and premises upon the trusts and for the purposes in that behalf provided in the said articles of association.

That as to the bill of complaint mentioned in the said complainant's said bill of complaint, to have been filed by the defendant, Harvey Durkee, and the subsequent proceedings had thereon or thereunder, this defendant is a stranger thereto and unable to make any particular answer, and therefore

prays liberty to leave the said complainant to make such proof thereof as he may be advised or able to make; but this defendant has been informed and believes that at or about the time mentioned in that behalf in the said complainant's said bill of complaint, the said defendant, Henry T. Stringham, was enjoined in the said suit of the said Harvey Durkee from further acting as trustee of the said company, as in the said bill of complaint is alleged, but whether the said Henry T. Stringham in fact acted as such trustee up to that time, or whether, while the said Henry T. Stringham acted as such trustee, he managed the affairs of the said company with honesty, or prudence, or advanced large or any sums of money for the said company beyond the amount of money received by him as such trustee; or whether, at the time he was so enjoined, the said company was indebted to him in the sum in that behalf mentioned in the said bill of complaint, or in any or what sum; this defendant says he is a stranger to all those matters, and unable to make any particular answer, and asks liberty to leave the said complainant to make such proof thereof as he may be advised or able to make.

That he is informed and believes that on or about the 7th day of January, in the year 1840, the said Henry T. Stringham did convey to the said complainant, by absolute or unconditional deed of conveyance, duly executed by the said Henry T. Stringham and his wife, the undivided three-quarters of the said lands and premises for the apparent consideration therein stated of two thousand dollars; that until the filing of the said complainant's said bill of complaint, this defendant always believed and had been so informed, that the said last mentioned deed of conveyance purported to convey the whole of the said lands and premises; that the defendant is informed and believes and so insists that the fact is, that the said last mentioned deed of conveyance contained

and was subject to, and was accompanied by no clause or instrument of defeasance whatever, but upon what actual consideration, or for what purpose, or upon what secret understanding between the said Henry T. Stringham and the said complainant, the said deed of conveyance was so executed, this defendant does not know and cannot answer, save as is hereinafter answered in that behalf.

That he is informed that some time in the year 1843, the said complainant being in insolvent circumstances, went into bankruptcy under the bankrupt law of the United States then in force, and was thereupon discharged from his debts; and in the course of the proceedings of his said bankruptcy did, in due form of law, assign, transfer and convey unto one Charles E. Clarke, his assignee in bankruptcy, pursuant to the requirements of the said bankrupt law, all his estate, property and effects, and amongst others all his, the said complainant's estate, right, title and claim in the said lands and premises, that the same was in pursuance of the provisions of the said bankrupt law, sold at public auction by the said Charles E. Clarke, as such assignee of the said complainant, and in pursuance of such sale that the said Charles E. Clarke did duly convey all the estate, right, title interest and claim of the said complainant, in and to the said lands and premises, to the defendant, Wesley Truesdail; but how the estate and interest of the said complainant in the said lands and premises were described in the schedule of the said complaint, filed in the proceedings of the said bankruptcy, or what notice the said Wesley Truesdail had thereof, save as is hereinafter answered in that behalf, this defendant does not know, and this defendant submits to this court that in whatever language the said interest and estate of the said complainant in the said lands and premises was entered or described in the said assignment of the said complainant in bankruptcy, and the said conveyance of his said assignee, were sufficient

WISCONSIN REPORTS. 45·

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

in law to convey the entire apparent estate and title of the said complainant in the said lands and premises, and the said complainant ought to be estopped from setting up in himself any estate, claim or equity of redemption in the said lands and premises, or any part thereof, against the title and estate so conveyed by the said Charles E. Clarke, his assignee, to the said Wesley Truesdail.

That he is informed and believes, and so insists that the fact and truth is, that prior to the said bankruptcy and assignment of the said complainant, and of the said conveyance of his said assignee to the said defendant, Wesley Truesdail, the said defendant, Henry T. Stringham, being largely indebted to the said Wesley Truesdail in his said Wesley Truesdail's own right, or as the trustee or agent of the bank of St. Clair, growing out of pecuniary transactions with the said Henry T. Stringham, as the trustee of the said company, and for the benefit of said company, and which said indebtedness was a fair and equitable claim against the said company and against the said Henry T. Stringham, as such trustee, made an agreement with the said Wesley Truesdail, who then held a mortgage on the said lands and premises for the like indebtedness of the said Henry T. Stringham as such trustee as aforesaid, such indebtedness then amounting in the whole to to a greater amount than the then value of the said lands, premises and appurtenances, that the said Henry T. Stringham would cause to be conveyed, transferred and assigned to the said Wesley Truesdail the said lands and premises and the personal property appertaining thereto, and all the interest of the said Henry T. Stringham, in the said company and in the capital stock thereof towards the payment of the said indebtedness of the said Henry T. Stringham; that upon making such agreement, the said Henry T. represented to the said Wesley Truesdail that his brother, the said complainant, held the entire title of the said lands and premises by conveyance

from him, the said Henry T. Stringham, and that it would therefore be necessary in order to complete the said agreement to procure the conveyance and assignment of the said lands, premises, and appurtenances from the said complainant to the said Wesley Truesdail; that thereupon the said Henry T. Stringham accordingly gave to the said Wesley Truesdail a written order, request or direction to the said complainant to make such assignment and conveyance, which was presented on behalf of the said Wesley Truesdail to the said complainant, but that the said complainant having already a day or two previously, filed his petition and schedule in his said proceeding in bankruptcy as aforementioned, and that he was unable to comply with such direction of the said Henry T. Stringham, and objected to doing so for that reason only, and expressed his willingness to have done so, if he had been so requested by the said Henry T. Stringham, before he, the said complainant, had gone into bankruptcy; that the said Wesley Truesdail, residing and being at a distance, the said complainant thereupon proposed to bid off his estate in the said lands and premises at the said assignee's sale, and have the same conveyed to the said Wesley Truesdail; that the said complainant did accordingly bid off the same at such sale for the sum of one hundred dollars, and that the said Wesley Truesdail, having paid such sum of one hundred dollars therefor, the said complainant did procure a conveyance thereof from the said assignee, the said Charles E. Clark, to the said Wesley Truesdail; that in and throughout the whole negociation and transaction in that behalf, the said Henry T. Stringham, and the said complainant represented that the conveyance of the said Henry T. Stringham to the said complainant was for the entire title of the whole of the said lands and premises, and the said Wesley Truesdail throughout sought and required, and the said complainant, and the said Henry T. Stringham professed a willing-

WISCONSIN REPORTS.                    47

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

ness and intention of giving to the said Wesley Truesdail, a full and complete conveyance, transfer and assignment of the said lands, premises and appurtenances entirely, and represented to the said Wesley Truesdail, that the conveyance of the said assignee of the said complainant, would and did convey to and vest in the said Wesley Truesdail, the entire and absolute legal estate of the whole of the said lands, premises and appurtenances, and all the right, title, claim, equity, and interest of said complainant, and of the said Henry T. Stringham therein; that the said Henry T. Stringham was then badly involved, as well as the said complainant; and this defendant is advised, has reason to believe and does believe, that the apparent title of the said lands was then subject to some collusion between the said Henry T. Stringham and the said complainant, with the intention, and for the purpose of evading the creditors of both of them, and the rights of all persons interested in the said lands and premises, and that they, the said complainant and the said Henry T. Stringham, did purposely deceive the said Wesley Truesdail, in regard to the title thereof, conveyed by the said Henry T. Stringham to the said complainant.

That he is informed and believes, and so insists, that the fact and truth is, that at the time of the last mentioned negotiation and transaction between the said Wesley Truesdail, and the said complainant and the said Henry T. Stringham, it was agreed as part of the said agreement and transaction, and for the same purpose and consideration, that the said Henry T. Stringham should transfer and deliver to the said Wesley Truesdail, all the stock in said company, which he, the said Henry T. Stringham, then held or was entitled unto; that the said Henry T. Stringham did accordingly from time to time, in the years eighteen hundred and forty-three and eighteen hundred and forty-four, transfer and cause to be transferred and delivered to the said Wesley Truesdail, all the

48 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

stock in said company, which he the said Henry T. Stringham, held or was entitled unto, with the full knowledge of the said complainant.

That he is informed and believes that the said Henry T. Stringham, then being such trustee as aforesaid, did on or about the twelfth day of March, in the year eighteen hundred and forty, in due form of law, execute and deliver to the said defendant, Wesley Truesdail, an indenture of mortgage of and on the said lands, premises and appurtenances, being the same mortgage hereinbefore mentioned, for the purpose of securing to the said Wesley Truesdail payment of the sum of five thousand dollars, then due and owing by the said Henry T. Stringham, as such trustee, to the said Wesley Truesdail, either in his own right or as the trustee and agent of the said bank of St. Clair, and growing out of pecuniary transactions with the said Henry T. Stringham as such trustee as aforesaid, for the benefit of said company, and which was a fair and equitable claim against the said company; that the amount of such debt was then bona fide due and owing, and has never been paid, released or extinguished in law or in fact, but now remains due, unpaid and unsatisfied, and that the said mortgage is now in full force, and has never been released, merged or extinguished; but as to the exact particulars of the origin of said debt, and the particular transactions between the said Henry T. Stringham and the said Wesley Truesdail or the bank of St. Clair, in relation thereto, this defendant is a stranger, and unable to make any further answer.

That he believes it may be true as in the said bill of complaint is alleged, that about the time mentioned in that behalf, therein, and soon after the discharge in bankruptcy of the said complainant, the said Henry T. Stringham and his wife did execute a deed of conveyance to the said complainant, purporting to convey to the said complainant the whole of the

said lands and premises; but this defendant has never seen such deed of conveyance, or any record or copy thereof, and cannot particularly answer as to the purport, date or contents thereof, or the time when the same was executed: and this defendant therefore prays liberty to leave the said complainant to make such proof of the said last mentioned deed of conveyance as he may be advised or able to make; but this defendant denies that at the alleged time of the execution thereof, the said Henry T. Stringham had any right or power to convey any estate or interest in the said land or premises, to the said complainant, as he may thereby have pretended to do; and this defendant, according to the best of his knowledge, information and belief, denies that the said last mentioned deed of conveyance was made or executed for a full or any valuable or legal consideration, or that at the time of the execution of such deed of conveyance, the said Henry T. Stringham was a stockholder of the said company; and this defendant believes and insists that such conveyance was a mere fraudulent device of the said complainant and the said Henry T. Stringham, to defraud all persons interested in the said lands and premises, for the mutual benefit of the said complainant and the said Henry T. Stringham. And the defendant insists that the same was and is wholly void and of no effect, and that no title or interest in the said lands and premises, or in the stock of the said company, passed thereby to the said complainant.

That he is informed and believes that afterwards, and on or about the nineteenth day of May, in the year eighteen hundred and forty-five, the said defendant, Wesley Truesdail, did execute some instrument in writing, whereby he did in effect, acknowledge that he held the said lands to secure a debt of twelve thousand five hundred and eighty-two dollars and thirty-seven cents, due by the said Henry T. Stringham to the said Bank of St. Clair, and did agree to convey the

same to said complainant, if the said complainant would pay therefor the said debt on or before the first day of January, eighteen hundred and forty-six; but the said defendant never having seen such instrument or writing last mentioned, prays the court to inspect the same when produced.

That prior to the purchase by this defendant, hereinafter mentioned, the said complainant never did pay the said debt or any part thereof. And this defendant says that after he became the purchaser of the said lands or premises, as hereinafter mentioned, he caused a demand to be made on or about the twenty-second day of January, eighteen hundred and forty-eight, both upon the said complainant and the said Henry T. Stringham, of payment of said debt, accompanied by notice that he, this defendant, had become the purchaser of the said lands and premises, and of said debt; but that both the said complainant and the said Henry T. Stringham, have wholly neglected and refused to pay the same or any part thereof, and that the same now remains wholly unpaid, save by the conveyance of said lands, premises, appurtenances and stock, as aforementioned. And this defendant insists that any right which the complainant might have acquired under the last mentioned instrument has wholly ceased and determined.

That he is informed and believes that some time in the year eighteen hundred and forty-four, under claim and color of being seized of the entire and absolute legal estate in the whole of the said lands and premises, and with the full knowledge, assent and permission of the said complainant and the said defendant, Henry T. Stringham, the said defendant, Wesley Truesdail, entered into possession of the said lands and premises; but as to the precise time and manner in which the said Wesley Truesdail received such possession, this defendant is a stranger thereto and cannot answer; and this defendant admits that the said Wesley Truesdail remained

WISCONSIN REPORTS. 51

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

in the exclusive and undisturbed possession of the lands, premises, and appurtenances, holding the same adversely to all the world, till this defendant came into possession thereof as hereinafter mentioned; but as to the exact use made thereof by the said Wesley Truesdail, or any wastes committed by him thereon, this defendant is not informed and cannot answer, except this defendant has no reason to believe, and does not believe that the said Wesley Truesdail did commit any waste thereon.

Says that he is further informed and believes, and so insists that subsequently to the conveyance of the said Charles E. Clarke to the said Wesley Truesdail, and prior to the purchase by this defendant hereinafter mentioned the said Wesley Truesdail did purchase up and take conveyances to himself of divers outstanding claims and rights in and to the said lands and premises.

That prior to and at the time of his purchase from the said defendant, Wesley Truesdail, as hereinafter mentioned, this defendant was a total stranger to all or nearly all the matters and things alleged in the said bill of complaint to have occurred prior to that time, and of the title of the said lands and premises, except as disclosed to this defendant by the said Wesley Truesdail as hereinafter mentioned; and that the information of this defendant in the premises, except as aforementioned, has long since been obtained; that prior to and at the time of his said purchase, he had no notice of any outstanding or subsisting right, claim or lien, at law or in equity of said complainant, or of the said Henry T. Stringham in the said premises, or in the personal property appertaining thereto, or in the stock of said company, except that the defendant was informed and advised by the said Wesley Truesdail, that the said complainant had had some color of right to acquire the title to said lands and premises by the payment of the said debt of the said Henry T. Stringham,

52 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

amounting to the sum of twelve thousand five hundred and eighty-two dollars and thirty-seven cents, with long arrears of interest thereon. And this defendant was then informed by the said Wesley Truesdail, and did believe, that subject to such right last mentioned of the said complainant, if the same was not then already extinguished, and to any outstanding rights which there might be in persons other than the said complainant and the said Henry T. Stringham, claiming to be stockholders in the said company, the entire property, estate and title of the whole of said lands was absolutely vested in the said Wesley Truesdail; that this defendant was also then informed by the said Wesley Truesdail, and did believe that the said conveyance of the said Henry T. Stringham to the said complainant, made prior to the said bankruptcy of the said complainant was of the whole of said lands and premises, and that this defendant was then informed by the said Wesley Truesdail and did believe that the intention and the legal effect of the transaction between the said Wesley Truesdail and said Henry T. Stringham, the said complainant and the assignee of the said complainant, at the time of the sale of the said complainant's interest in the said lands and premises by his said assignee in bankruptcy, was to vest in the said Wesley Truesdail the entire and absolute estate of both the said complainant and the said Henry T. Stringham in the whole of said lands and premises in the said Wesley Truesdail. And this defendant further says that prior to and at the time of his said purchase from the said Wesley Truesdail, he had no information or notice of any fact contrary to the information he received from the said Wesley Truesdail.

That being engaged in the lumbering business, and being desirous of purchasing such property for the purpose of his said business, he did in the month of November, eighteen hundred and forty-seven, purchase from the said defendant, Wesley Truesdail, the said lands and premises, with the

appurtenances, personal property appertaining thereto, and all the stock in the said company, held by the said Wesley Truesdail, and also the said mortgage of five thousand dollars, together with the accompanying note of the said defendant, Henry T. Stringham, and the note of the said Henry T. Stringham for his said debt to the said Bank of St. Clair, amounting to twelve thousand five hundred and eighty-two dollars and thirty-seven cents, besides interest, for the consideration of four thousand two hundred dollars, then paid by this defendant to the said Wesley Truesdail, upon the belief, understanding and notice in regard to the title thereof, heretofore stated, and upon no other belief, understanding or notice whatever in the premises; and that this defendant then believed and now believes that the sum so paid by him, was a fair price for the same.

That in the month of January, eighteen hundred and forty-eight, this defendant did enter into possession of the said lands and premises, as he of right might do, and has ever since remained in exclusive possession thereof; that this defendant has not received any income from the said lands and premises; that neither he nor his servants, nor any other person under him, to his knowledge or belief, have since cut or used any timber growing on said premises, except a few hemlock trees of very little value, for the purpose of being used on the said premises, and which are now, as this defendant believes, lying thereon.

Says that he claims to be the owner, in his own right, of all the stock of the said company, except a few shares claimed to be held by the said defendant, Harvey Durkee, or some other person of persons, if the same are valid subsisting shares o such stock, and of the entire and absolute title of the whole of said lands and premises; but if, by the contrivance and collusion of the said complainant and the said Henry T Stringham, the title of any part of the said premises, is no

now vested in this defendant, as he claims to be a mortgagee in possession of such part, under and by virtue of the said mortgage of five thousand dollars, which has been and is kept on foot, as a protection to the title of the said lands and premises, and has not been merged in the legal estate.

That all the right, claim and interest of the defendant, Ramsey Crooks, in the said lands and premises, and as a stockholder in the said company, are now vested in the defendant.

That as to the doings and proceedings of said defendant, Frederick Borchardt, mentioned in the said bill of complaint, he is a stranger thereto, and cannot answer, except, that this defendant is informed and believes, that the said Frederick Borchardt never has claimed any interest in said lands and premises, but was in possession merely as an agent, first of the said Henry T. Stringham, and afterwards of the said Wesley Truesdail.

And this defendant further answering says, that as to all and every, the matters and things alleged in the said bill of complaint, as having occurred prior to the said purchase by said defendant, he was an entire stranger thereto, and except so far as they are heretofore answered, cannot make any particular answer thereto.

The separate answer of Wesley Truesdail, one of the defendants to the bill of complaint of Joseph Stringham, complainant in the above entitled cause.    *    *    *    *

That he knows not and has not been informed, save by the said complainant's said bill, and cannot set forth, as to his belief or otherwise, whether any such association, company or partnership was ever in fact formed, entered into or organized as mentioned in said bill, either in the name of the Neshoto Lumbering Company, or by any other name, nor if formed, whether for the same purpose set forth in said bill, or for what purpose or purposes. Nor has this defendant

any knowledge or belief respecting the provisions of said articles of agreement in that behalf as stated and set forth in said bill. This defendant never having read any such articles of agreement or association, and never having had any knowledge or information respecting either the existence of any such company or association or partnership, or any matter or thing connected therewith or relating thereto, or respecting acts, doings or proceedings of any person or any persons claiming to belong to such an association, and never having received any information respecting the same, the vague and contradictory information given in that respect to this defendant by the said complainant, and his brother, Henry T. Stringham, after the time when alleged in said bill, said association was formed, said stock distributed, said trustees appointed, and all other things in that behalf had, and done, up to the time when said mortgage for five thousand dollars was executed by said Henry T. Stringham, this defendant cannot further answer, and has no belief whether any or all of the said statement relating to matters, acts and things, as stated in said bill, as having been done, accrued or existed previous to the date of said mortgage, are true in said bill or not. But submits the same to the determination of this honorable court, upon the proofs and testimony that may be offered by said complainant.

Says it may be true for anything this defendant knows to the contrary, that such an association or partnership was formed and called the Neshoto Lumbering Company, and for the purposes stated in said bill, and that the said articles of agreement were as in said bill set forth, and that the lands in said bill described or referred to, were the property for the using and improving of which said association was formed, and were held and conveyed up to the time of the making of said mortgage to this defendant, as set forth in said bill; and that the said Ellis and Henry T. Stringham were respectively

trustees for the periods stated in said bill; and that said lands and premises, when said Henry assumed said trust, were in the condition set forth by said bill, and that said association was indebted at that time, and that said Henry paid and expended sums of money therefor, and advanced large sums of money for said association; and that the said Ellis made the several conveyances to the said Henry, as stated in said bill. But this defendant is an utter stranger to all and every such matters, and cannot form any belief concerning the same.

He has been informed and believes, and therefore admits that a bill was filed in August, A. D. 1843, by said Harvey against said complainant and said Henry T. Stringham, as stated in said bill, and an injunction granted in said suit; but this defendant never took any part in the bringing, carrying on, conducting, disposition or determination of said suit, and knows nothing personally about the same, but has been informed and believes, that said suit was in all respects fairly, legally and honestly conducted, managed, determined and disposed of. And this defendant for himself denies that he ever colluded with the said Harvey Durkee and Ramsey Crooks, or with any other person or persons, for the purpose of defrauding the said complainant in the matter of filing of amendment or amendments to the said bill of said Harvey Durkee, against Joseph and Henry T. Stringham, and in the matter of the said discontinuance of the said suit against said Henry or Joseph; and expressly denies all participation in, and all knowledge of any fraud or false representation on the part of any person or persons in the obtaining and rendering of the said decrees in said suit brought, and bill filed by said Harvey Durkee against said Joseph and Henry T. Stringham. And this defendant does not know, nor does he believe that said decrees were or are unjust, or a fraud upon the said Joseph Stringham, complainant.

That the said mortgage, executed by the said Henry T.

## WISCONSIN REPORTS.    57

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

Stringham to this defendant to secure the payment of five thousand dollars, was executed March 12, A. D. 1840, and was given in reality as collateral security to secure to the bank of St. Clair, the eventual payment and redemption of that amount of the bills of the Bank of Wisconsin taken, or that might be taken or received by said Bank of St. Clair—that amount or nearly that amount of said bills of the Bank of Wisconsin, having been then already taken and remaining on hand in the bank of St. Clair at the time of the execution of said mortgage, besides other amounts of said bills, that were after that time taken by said bank of St. Clair and in all to a much larger amount than the sum so secured by said mortgage, all of which bills were so taken and received by said bank of St. Clair (of which last bank this defendant was cashier at the time) from the first, at the solicitation and request of said Henry T. Stringham, and upon his express and repeated guaranty and promise of indemnity and security, he, the said Henry T. Stringham, at the time being interested in the said Bank of Wisconsin, and that said transaction, with respect to said mortgage, was a fair and bona fide transaction, and that all the facts and circumstances relating thereto, and connected therewith, were long before and at the time of the execution of said mortgage, and up to the present time fully known and understood by the said Henry T. Stringham, as also as this defendant believes by the said complainant, Jos. Stringham.

That since the giving of said mortgage, neither the said mortgage nor the debt for which it was given, has ever been paid, annulled, satisfied or discharged, and that there has been no time at which said Bank of St. Clair did not hold a considerable amount of the said bills of the Bank of Wisconsin for the redemption or payment of which there was no other security than said mortgage from said Henry T. Stringham to this defendant. And there is still at this time remain-

ing among the papers and assets of said Bank of St. Clair an amount of the bills and liabilities of said Bank of Wisconsin and of said Henry, equal to the amount for the security of which said mortgage was given, and which are utterly worthless, and never could have been collected of said Bank of Wisconsin since the failure and bankruptcy which happened long since, and which were not presented to said bank for redemption previous to its failure, at the express request of said Henry T., and relying upon said mortgage. At different times since the execution of said mortgage the amount of bills on hand by the said Bank of St. Clair against said Bank of Wisconsin was varied, being sometimes more and sometimes less, and the amount now remaining on hand is a total loss to said Bank of St. Clair.

That at one time the said Henry T. did furnish to the defendant certain drafts, which, if the money had been realized upon them to the full amount, would have been sufficient, if it had been appropriated and applied to that purpose, to redeem all the bills at that time held by the said Bank of St. Clair against said Bank of Wisconsin; but a part only of the money was ever realized on said drafts, and the whole of the money that was collected and realized on said drafts, was, at the express request and solicitation of said Henry T., not applied to the discharge of said mortgage; and said bills of the Bank of Wisconsin still remaining on hand unpaid and unredeemed, and nothing was ever indorsed and applied on said mortgage; but on the contrary it was admitted and understood between this defendant and the said Henry T. and Joseph, at the time of the purchase of said lands by this defendant from the assignee in bankruptcy of the said complainant, in May, 1843, that said mortgage remained uncancelled and unpaid.

That after the execution of said mortgage, the said Henry T. became further indebted to said Bank of St. Clair for mon

## WISCONSIN REPORTS.  59

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

eys had and loaned at different times; and that upon an amicable settlement of said account, there was found and stated to be due from the said Henry to the Bank of St. Clair on the 19th of May, 1845, the sum of twelve thousand five hundred and eighty-two dollars and thirty-seven cents (12,-582,37), which is the amount that was due in 1843, at the time of the purchase of said lands by this defendant, with the addition of the interest and the subsequent advances made, and that accrued in the mean time. This amount of balance included the entire supposed indebtedness of said Henry at that time, and if paid would have been in full for said mortgage, as well as all else. This amount, however, of the so ascertained indebtedness of the said Henry T., instead of being too large as now alleged in said complainant's bill of complaint, was in fact too small, and should have been increased by the addition of five hundred and twenty-two and thirty-one one hundredth dollars, for other moneys before then advanced to and paid for said Henry, which was overlooked and omitted in the adjustment of said balance.

With regard to the allegations and averments in said bill respecting the claim originally against said Chester & Stringham, of which firm, when in existence, the said Henry T. was a partner; that said firm at one time did business in the city of Detroit, where they failed in business, being at the time of such failure indebted to said Bank of St. Clair; that said firm then made an assignment of their assets to this defendant, as trustee for the said Bank of St. Clair, and to secure and pay such indebtedness so far as the avails of said assets would go. That said Henry T. became the successor in business of said firm, and assumed its liabilities, taking upon himself to pay the balance due from said firm to said Bank of St. Clair, and therefore in fulfilment of the understanding to that effect, and with the full knowledge and approbation, and at the express request of the said Henry T., the said

Chester was released from his liability on account of said indebtedness, and that this defendant did faithfully and promptly , and to the best of his abilities, discharge his du-- ties as such assignee of said Chester & Stringham ; that he collected and realized in all, on and out of said assets, the nett sum of nine hundred and sixty-nine dollars and ninety-three cents ($969,93), and no more, and that the remainder of said assets are of no value whatever, and that the said amount of nine hundred and sixty-nine dollars and ninety-three cents was, at the time of reckoning and adjusting said account between said Henry and said Bank of St. Clair above mentioned, passed to the credit of said Henry, and deducted out of said indebtedness of said Henry.

That finding the said Henry T. largely indebted to said Bank of St. Clair, and far beyond the amount covered by said mortgage, he became anxious to obtain payment, or further security from him, and with that view negotiated with said Henry T. to obtain from him a mortgage or conveyance of his interest in said lands and premises referred to in said bill, and also a transfer of his stock and interest, whatever it might be; in said so called Neshoto Lumbering Company, which said negotiation resulted in an arrangement between this defendant and the said Henry T., to the effect that the whole of said stock should be transferred, and the whole of said lands held by said Henry T., whether held by said Henry T. in his own name or in the name of his brother, the said complainant, Joseph Stringham, should be conveyed to this defendant, to be held by him, this defendant, in trust for said Bank of St. Clair, which said arrangement was finally made but a few days before said Joseph filed his schedule and petition for the benefit of the bankrupt law, and as the said Henry then informed this defendant that at some time after the execution of said mortgage, and previous to the time of the negotiation last above referred to, he, said Henry, had

conveyed his interest in said lands to said complainant, it become necessary to obtain a conveyance of said lands from said Joseph, and to effect and carry out said arrangement, said Henry wrote and delivered to this complainant a letter of request, directed to said Joseph, requesting and desiring him to convey said lands to this defendant, which letter of request was dated on or about February 1st, 1843, and was delivered by said Henry to this defendant, and was by this defendant enclosed in a letter dated February 4th, to his agent in Buffalo, where said Joseph resided at that time, for the purpose of obtaining the conveyance referred to, which letter of request was by said agent presented to said Joseph on the 14th day of February, 1843, and a conveyance requested accordingly; to which request the said Joseph replied, that he had the day before gone into bankruptcy, and had among other things included his interest in the lands in question, in his schedule, and could not therefore do anything about it; and subsequently, about the first of March, when urged again to make said conveyance, the said Joseph replied that he would have conveyed in accordance with the request of said Henry, if he, said Joseph, had been requested to do so before he made his schedule; but could not do so then under existing circumstances. It was therefore thus arranged, agreed and understood, between this defendant and the said Henry and Joseph, that, as the only remaining way to carry out the arrangement, the said lands should be bid off by or for this defendant, at the sale of the assets and effects made over to the assignee of the said Joseph in bankruptcy, and the said Joseph agreed to bid off or cause to be bid off the same for the benefit of this defendant, at such sale, and did so bid off the same at such sale, which took place on the 8th day of May, for the sum of one hundred dollars; and on the next day the said Joseph informed this defendant that he, said Joseph, had bid off said interest for the sum aforesaid,

and that this defendant should have the benefit of said bid by paying the amount of said bid, to wit: one hundred dollars, to which this defendant assented, and paid said hundred dollars; and at the suggestion of said Joseph the said conveyance was made direct from the assignee of said Joseph in bankruptcy to this defendant. And long before the time of said conveyance to this defendant, as well as at the time when said interest was bid off by said Joseph for this defendant, it was known and understood by all parties that said conveyance so made as above stated from said Henry to said Joseph, in January, A. D. 1840, was made without any consideration whatever, and that the same was so made by said Henry and accepted by said Joseph, merely for the purpose of preventing the sacrifice of said property by the creditors of said Henry in Wisconsin, and of placing said property beyond their reach; and that although by this means the title to said property was in the name of said Joseph, yet in fact the said Joseph merely held it for said Henry, and subject at all times to the control and direction of said Henry, and to this effect were at all times the statements of said Henry upon this subject, repeatedly made to this defendant; and these statements of said Henry were at all times and repeatedly confirmed, both by the language and the conduct of said Joseph; and until the statement made to that effect in this schedule and assignment of the said Joseph to his assignee in bankruptcy, this defendant never heard nor understood that said Joseph pretended to hold said lands in any other way, or for any other purpose than as hereinbefore stated, nor that said Joseph pretended to have, in reality, any claim on said lands, or to hold the same as security for any amount of money due him from his said brother Henry. And further, that after the making of said statement by said Joseph, in his said schedule, to the effect that he held said conveyance as security for five or seven hundred dollars, or some other

sum due to him from said Henry, the said Henry still protested to this defendant that he did not in fact owe his said brother Joseph anything for which said lands were or should be encumbered ; and in the subsequent negotiations and doings, in perfecting the title to said lands, this statement of the said Joseph was treated and regarded as if it had not been made, and was not taken into the estimate, and had no influence upon the conduct either of this defendant or of the said Henry or Joseph. But, on the contrary, the whole negotiation was carried on, and the arrangement and conveyance to this defendant was completed and made with the full understanding that said lands were in fact the property of the said Henry ; and the said Joseph and his pretended interest in the same, were only regarded or thought of, because in order to perfect the arrangement it became, and was under the circumstances necessary, in this way to obtain a transfer of the ostensible legal title from said Joseph to this defendant. The parties in interest were really the Bank of St. Clair on the one part, seeking to get something on its claim against the said Henry, and for which bank this defendant was all along only acting as trustee. And on the other part, the said Henry, who was seeking in this way to carry out the arrangement agreed upon, the said Joseph having in truth no interest or claim in the matter, and nothing further to do in the premises than to assist by the use of his name, in causing the conveyance to be made to this defendant according to the understanding of the parties, and the direction of said Henry ; and all this the said Joseph well knew and understood from the first, and all along, as well as at the time of the bidding off for and making the conveyance of said property to this defendant, as aforesaid ; and so well informed was the said Joseph at the time, of the true nature of the understanding, and of the nature of the transaction, that after he had bid off said property as aforesaid for this defendant, the deed was

64 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

executed by his said assignee to this defendant, the said Joseph, in writing to the agent of this defendant, requested that this defendant should give back a declaration in writing, acknowledging that he (this defendant) held said lands in trust for the Bank of St. Clair, and to secure or pay the said indebtedness of said Henry to said bank ; but as the arrangement was between said Henry and this defendant, he, this defendant, refused to give said Joseph any such paper on the subject, and subsequently the said Henry wrote to said Joseph under date of May 25th, 1843, and therein requesting said Joseph to convey, or to suffer a conveyance to be made to this defendant unconditionally ; and also informing the said Joseph in the same letter, that the stipulations in this matter would be arranged by this defendant and the said Henry, and upon receipt of said letter, and in compliance with the request therein contained, the said Joseph consented and permitted said conveyance to be made direct to this defendant.

Denies that said Joseph ever held said lands as security for five or seven hundred dollars, or for any other sum or sums of money, due or to become due to him from said Henry, and denies that he, this defendant, ever purchased or took any such interest in said lands by virtue of the conveyance aforesaid, from said assignee to this defendant, and denies that there was ever any agreement or understanding that this defendant would or should take or accept any such interest in said lands ; and denies that he, this defendant, ever agreed or understood that he would or was to hold said lands or any part thereof, as trustee, either for the said Joseph or the said Henry. But, on the contrary, this defendant expressly states that the understanding and agreement in this behalf was as hereinbefore stated ; that it was distinctly agreed and understood that the whole and entire interest, both of the said Henry and of the said Joseph, both in said lands and in said

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

so called company, was to be transferred and conveyed to this defendant, as trustee for the Bank of St. Clair.

That at the time of the said mortgage by the said Henry to this defendant, this defendant was induced by the false representation of said Henry to believe, that at the time the legal title to the whole of said Henry's interest in said lands, which he had ever held, was still in said Henry, whereas it turned out, as this defendant afterwards learned, that in the January previous, said Henry had made the aforesaid conveyance to said Joseph, without consideration, and for the purposes hereinafter stated, and that when this defendant afterwards learned that such a conveyance had been so made by said Henry to said Joseph, this defendant was induced by the representations both of said Henry and said Joseph, to believe that said conveyance was of the entire interest of the said Henry, and so continued to believe at the time of the subsequent negotiations and arrangements aforesaid, and the making of the said conveyance from said assignee to this defendant, and was never informed to the contrary until he learned from the statements in said complainant's bill of complaint, that the said complainant claims one-fourth part of the original interest of said Henry, which he pretends was not included in said first conveyance from said Henry to said complainant but was conveyed as alleged by said Henry to said complainant at a period subsequent to the bankruptcy of said complainant.

That in all the negotiations, and in the supposed communications of said arrangement as aforesaid, it was fully understood and agreed that the entire interest of said Joseph in said land and company, and the entire interest, ownership, and claim originally, or at any time previous to said conveyance from said assignee to this defendant, as well as all stock and interest in said so-called company, at any time before then owned, had or held by said Henry, should be conveyed or transferred to this defendant, free and clear of all claims, liens

and incumbrances that might or could be set up or claimed by either the said Henry or Joseph, or by any person claiming under them or either of them.

That after the making of said conveyance by the said assignee to this defendant, the said Henry, did, in so far fulfilment of said arrangement, transfer and deliver to this defendant, the so entitled certificates of stock of said so-called company, as evidence that this defendant had then become the purchaser and owner of all said stock that had belonged to said Henry. The conveyance of said lands, and the transfer of said so-called stock, were made absolute, so as to vest the absolute property and control in this defendant, and subject only to the understanding that if said Henry should, within a certain time limited, as hereinafter stated, pay up this amount of his said indebtedness to said Bank of St. Clair, then this defendant would convey and transfer to said Henry all said rights, interest and property. And this defendant admits that he did, on the 19th day of May, 1845, at the request of said Henry, make, sign and seal a certain instrument in writing, of that date, by and in which writing this defendant did state that he held said lands *in trust for the said Bank of St. Clair*, to secure the said indebtedness of said Henry T. Stringham, to said bank, and that if the said Joseph would or should pay the amount of such indebtedness on or before the first day of January, A. D. 1846, in the notes and other liabilities of said bank, or in cash, that then this defendant would convey to the said Joseph, all the interest and title whatsoever of this defendant in the lands aforesaid, which said writing was given at the request of the said Henry, and in form and substance as he directed and assented to; and on the same day, upon reckoning up and ascertaining the amount of said Henry's indebtedness at that time, the said Henry gave his promissory note for the sum of twelve thousand five hundred and eighty-two and thirty-seven hund-

redths dollars, ($12, 582, 37–100), and did also, on the same day, sign a written acknowledgement (attached to or indorsed on the same paper, containing the writing aforesaid, signed and sealed by this defendant,) stating and acknowledging his said Henry's indebtedness to said bank, to the amount aforesaid.

And this defendant would have been well pleased and satisfied if the said Henry or Joseph, at any time previous to the sale and conveyance of said property by the defendant to said Isaac Taylor, as hereinafter stated, had paid up the amount of said Henry's indebtedness and taken said property back; but the said Henry and the said Joseph have always neglected, failed and refused to pay said indebtedness, and the sum still remains wholly unpaid, except so far as any application of the whole or any part of the purchase money received from said Taylor ought to be made thereon.

Admits that after the said conveyance to him and in the summer of 1843, he did by his agent come into the possession of said lands and property, and so continued in possession until November, 1847, when he sold out to said Isaac Taylor. But this defendant denies that he came into possession of said property, by means of any fraud, collusion, or unfair means, but that he did so with the full knowledge, consent, and approbation of said Henry and Joseph, who did not then, so far as known to this defendant, pretend to have, nor did either of them claim to have any right, title or claim to the whole or any part of said property, or any lien of encumbrance thereon, nor any right of possession thereto. And this defendant also denies that he ever received or realized any income, rents, profits, moneys or avails of any kind to any amount whatever, from said property; but on the contrary, he states that, in order to take care and protect said property, and carry on the business then conducted, he was forced to and did necessarily lay out and expend a large sum of money,

over and above all that was realized from and for the same, in all to the amount of some twelve or fifteen hundred dollars, the exact amount of such excess of expenditure over the receipts this defendant is unable to state, because some of the claims against him on that account are unsettled, and because the whole business there was managed and conducted and the books kept by one Frederick Borchardt, his agent.

Denies that either said Henry or said Joseph have any claim whatever, either by way of trust, mortgage, lien or otherwise, upon said lands and property, or any part thereof, or any title or claim to the same or any part of the same. Denies that said Henry and wife ever made any subsequent conveyance or assignment to said Joseph, as stated in said bill, for a valuable consideration, or that any right or claim ever passed to the said Joseph, by any such pretended conveyance or assignment. And he denies that said complainant owns any stock whatever in said so-called company or association, as claimed in his said bill.

Admits that he did, in the month of November, A. D. 1847, sell and convey and assign and make over to said Isaac Taylor, for the sum of four thousand two hundred dollars, received of said Isaac Taylor, being the full amount of purchase money agreed upon, all and singular, the right, title, claim and interest of this defendant, in and to the lands and property aforesaid, and everything pertaining thereto, and all stock in said so-called company ; and did convey said lands to said Taylor by deed, and transfer and make over said stock by transfer and delivery of the certificates of stock so received as aforesaid, by this defendant from said Henry, and did also then assign to said Taylor said five thousand dollar mortgage and said note against said Henry, which said lands and property, as well as said mortgage, note and stock, and all interest, claim and demand of this defendant, and of the said Bank of St. Clair, in and to any, every and all of the same, did thereby,

then and there pass to and become, and was intended to pass to and become the absolute property of said Taylor, for the consideration aforesaid, by him so paid. And this defendant is informed and believes, and therefore admits, that the said Taylor did, soon after the purchase by him as aforesaid, peaceably and lawfully enter upon and take possession of said property, and has continued in the possession of the same as his own property, as he has a good and perfect right to do, as this defendant believes.

On the 22d July, 1852, Isaac Taylor filed his supplemental answer as follows, &c. . *    * That this defendant, since his purchase of said lands and premises from the said Wesley Truesdail, and since this defendant took possession thereof, has expended a large sum of money, to-wit: the sum of ten thousand dollars and upwards, for permanent improvements made and caused to be made upon said lands and premises, by this defendant, which said improvements mainly consist in building and erecting two saw mills, one propelled by steam and the other by water, and in repairing the saw mills standing on said lands and premises at the time of his said purchase thereof, by which said improvements the said lands and premises have been enhanced in value to the amount of ten thousand dollars.

He has been informed and believes, and therefore admits, that a bill was filed in August, A. D. 1843, by the said Harvey Durkee, against said complainant and the said Henry T. Stringham, as stated in said bill of complaint, and an injunction granted in said suit, but this defendant was not a party to said suit, and never took any part in the bringing, carrying on, conducting, disposition or determination of said suit, and knows nothing personally about the same, but has been informed and believes that said suit was, in all respects, fairly, legally, and honestly conducted, managed, determined and disposed of, and this defendant, for himself, expressly denies

that he ever colluded with said Harvey Durkee and Ramsey
Crooks, or either of them, or with any other person or persons,
for the purpose of defrauding the said complainant in the
matter of the filing of amendment or amendments to the said
bill of the said Harvey Durkee against the said Joseph and
Henry T. Stringham, and in the matter of the said discontin-
uance of said suit against said Henry, or either, and expressly
denies all participation in and all knowledge of any fraud or
false representations on the part of any person or persons in
the obtaining and rendering of the said decree in said suit
brought, and bill filed, by said Harvey Durkee against the
said Joseph and Henry T. Stringham; and this defendant
does not know, nor does he believe, that the said decrees were
or are unjust, or a fraud upon the said Joseph Stringham,
complainant. And this defendant says and alleges, that the
said complainant appeared and answered the said bill of com-
plaint filed by the said Harvey Durkee against said complain-
ant and Henry T. Stringham, and had at that time all the
rights and interests in the said lands and premises, if any,
which said complainant now has; that all of said rights and
interests were or ought to have been fully passed upon by
the said court, in said cause; that the decree last made in
said case still remains in full force and effect, not in the least
vacated, reversed, or made void, and that this defendant
claims, insists and submits to the court, that said complainant
is fully bound by said last decree, and forever barred and
precluded thereby, and that this defendant, by and under his
said purchase from said Wesley Truesdail, did acquire rights
under and by virtue of said last decree, which ought not, in
any way or manner, to be affected by this suit.    *    *    *

March 14, 1855, the cause came on for argument on the
pleadings and proof submitted by the respective parties.

The following papers were read in evidence on behalf of
the complainant, the same having been produced by the

WISCONSIN REPORTS. 71

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

defendant, Isaac Taylor, upon request, in open court, subject to objection as to their materiality or relevancy, as evidence for the complainant, Joseph Stringham, marked:

HENRY T. STRINGHAM AND WIFE TO JOSEPH STRINGHAM: Certified copy of deed, dated January 17, 1840, acknowledged Jan. 17, 1840, recorded book A, vol. 1, pp. 58 and 59, Jan. 21, 1840, conveying an undivided three-fourths òf the said lands, the same having been deeded to said Stringham by A. G. Ellis and wife by deed, dated 6th February, 1839, and recorded Feb. 20, 1839, in book K, pages 455, 456, and 457.

HENRY T. STRINGHAM AND WIFE TO JOSEPH STRINGHAM: Certified copy of deed dated June 25, 1844, acknowledged June 26, 1844, recorded in book R, vol. 1, pages, 266, 267, and 268, on the 9th July, 1844, conveying all of said lands.

ALBERT G. ELLIS AND WIFE TO HENRY T. STRINGHAM, Trustee of the Neshoto Lumbering Company. Original deed dated July 29, 1837, acknowledged July 29, 1837, recorded in volume 1, pages 272, 273 and 274, conveying an undivided three-fourths, to have and to hold the same unto the said Henry T. Stringham, trustee of the " Neshoto Lumbering Company," and to his successors in office and assigns forever.

ALBERT G. ELLIS AND WIFE TO HENRY T. STRINGHAM: Original deed dated Feb. 6, 1839, acknowledged Feb. 6, 1839, recorded in book K. pages 455, 456, and 457, conveying an undivided three-fourths of said lands.

ALBERT G. ELLIS, late Trustee of the Neshoto Lumbering Company, to HENRY T. STRINGHAM, present Trustee of said Company. Original deed dated Nov. 26, 1839, acknowledged Nov. 26, 1839, recorded in volume I. pages 230 and 231, conveying an equal undivided one-fourth of said premises.

JAMES D. DOTY AND WIFE TO HENRY T. STRINGHAM, Trustee
of the Neshoto Lumbering Company.

Original deed dated July 29, 1837, acknowledged July 29,
1837, and recorded in vol. I, pages 271 and 272, conveying
eighty acres of said premises, to have and to hold, unto said
Henry T. Stringham, trustee of the Neshoto Lumbering Com-
pany, and to his successors in office and assigns forever, to
and for the uses and benefit of the said company and asso-
ciation, and in the manner and form specified and set forth
in the certain articles of association entered into between the
members and stockholders of said company, for the govern-
ment thereof, and not otherwise.

CHESTER FORD TO ALBERT G. ELLIS, Trustee of the Neshoto
Lumbering Company.

Original deed dated Feb. 16, 1837, acknowledged Feb. 17,
1837, recorded Oct. 20, 1837, in vol. I, pages 339 and 340,
conveying an equal undivided one-fourth, to have and to
hold, unto said Albert G. Ellis, trustee of the Neshoto Lum-
bering Company, and to his successors in office and assigns,
to and for the use and benefit of the said company and
association, and in the manner specified in certain articles of
association, entered into between members and stockholders
of said company for the government thereof, and not other-
wise.

CHESTER FORD TO ALBERT G. ELLIS:

Original deed dated Feb. 1, 1837, acknowledged Feb. 1,
1837, recorded Feb. 15, 1837, in vol. II. pages 2, 3 and 4,
conveying an undivided three-fourths of a portion of said
premises.

M. JAY HOWARD TO ALBERT G. ELLIS:

Original deed dated Feb. 7, 1837, acknowledged Feb. 7,
1837, recorded Feb. 14 1837, in vol. II, pages 6 and 7, con-
veying a portion of said premises:

The complainant produced certified copies of articles of association marked in words following :

Indenture and articles of agreement and association, made this first day of February, A. D. 1837, by and between the several persons whose names and seals are hereunto subscribed and annexed.

ARTICLE 1. The name and style of this association shall be the Neshoto Lumbering Company, and its objects shall be to raise moneys to be employed for the benefit of the members of this association, in the purchase and sale of land situated on the borders and in the vicinity of Twin rivers, in Wisconsin Territory; to build mills and machinery for sawing, grinding and other purposes, on said river; to lay out a town on the land of the company, and to make such improvements thereon as may be deemed for the benefit of the association.

ART. 2. The capital stock of this association shall consist of fifty thousand dollars, to be divided into five hundred shares of one hundred dollars each. All persons who shall subscribe for one or more shares of said capital by signing and sealing this indenture, and by paying to the trustee hereinafter named, the sum of ten dollars, on each share so subscribed, and all persons who shall become the holders of any such shares by transfer, in the manner hereinafter provided, shall be members of this association.

ART. 3. The capital, property, affairs and concerns of this association shall be managed by one trustee, who shall be a member of this association. Albert G. Ellis, of the county of Brown, shall be the first trustee, and he shall remain as such until the object of the association be closed, unless he shall die, resign, or be removed by a majority of the members of this association, or by competent judicial authority; and the holders of each share be entitled to one vote on each share he may hold, in person or by proxy, on this and all other

74 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

questions arising under these articles. A trustee may resign, and discharge himself of his trust by instrument in writing, under his seal, and executing to the member elected as his successor, such conveyance as may be necessary for the purpose of transferring the title to the property of the company then vested in him, subject to all his legal liabilities, to account for his acts as such trustee; and whenever a trustee shall cease to hold one share of the said capital, his place shall be deemed to be vacant, and the vacancy shall be filled by such member as a majority of the members shall, by instrument in writing, under their hands and seals, appoint.

ART. 4. The trustee shall keep a book in which shall be registered the names of all the members, and shall deliver to each member a certificate of the number of shares held by him, in the following form: " This certifies that of            is proprietor of            shares of the capital stock and the beneficial interests in the Neshoto Lumbering Company, now created and acquired, or hereafter to be created and acquired, in pursuance of the indenture and articles of agreement and association entered into for the formation of the said company by the members thereof, and dated the first day of February, 1837; the sum of            dollars has been paid on each of said shares, and the same subject to all the provisions, covenants and charges contained in said articles of agreement, or authorized thereby (as will more fully appear by reference thereto) transferable by indorsement on the back hereof, and by delivery of this certificate

                                        Trustee."

The shares may be transferred by the holders thereof or his personal representatives, by indorsement under his hand and seal; Provided the assignee shall in person, or by his attorney, affix his name and seal to this indenture, and become a party thereto. The form of such indorsement shall be as follows: " For and in consideration of            I here-

by assign and transfer to        of        and his executors, administrators and assigns, all my right, title and interest in the within share of the capital and beneficial interests of the Neshoto Lumbering Company, subject to all the provisions, covenants and charges contained in the indenture constituting said company, or authorized thereby." The transfer shall be registered in the book kept by the trustee, the former certificate shall be delivered up, and a new one issued in a similar form, except that every such new certificate shall designate the name of the original proprietor of the share or shares transferred, and thereafter the shareholder making such transfer, shall be released from all liabilities as a member of this association, in respect to the shares so transferred, and shall not be entitled to any interest therein.

Art. 5. The capital of this Association and the beneficial interests of the said shareholders thereof, notwithstand conversion of any part or the whole of the capital and other funds of the Association thereof, into land, shall be, and are hereby declared and agreed to be personal property, and on the death of any shareholder, his share and interests shall go to his personal representatives and not to his heirs at law, and such heirs at law shall at no time claim any interest, legal or equitable, therein.

Art. 6. The Trustee of said Company shall receive and take charge of moneys which shall be paid on account of the capital of this Association, or which shall accrue to the association from sales of any property, or in any other way, or to which it may become in any way entitled, and shall have power to sue for, and collect the same. He shall have power to invest the capital of the association in the purchase of lands or the erection of mills and machinery as aforesaid, and in the working, management and improvement of the same; to sell, bargain, and convey from time to time of the property of the association, as he may find opportunity, any part or

all, of the personal property of the company, to lease its lands, or any part thereof, and to lease any town lots belonging to the said company, and other lands, if so directed by a majority of the stockholders, and to take such securities for the purchase money as he may think fit; to pay out of the funds of the association the compensation of persons employed by him, and all taxes and other necessary expenses incurred for improvements or otherwise, for which purpose, if the association shall not have funds sufficient therefor in his hands, he shall have power, after thirty days notice in the several papers printed in the Territory, to require the shareholders to pay him on each share of the said capital instalment not exceeding two dollars on each share then held by the shareholders respectively.   To make dividends semi-annually (commencing on the first Monday in January, 1838) to and among the several shareholders, of such profits as may accrue to the association ; Provided, that said trustee shall give bond for the faithful discharge of his trust, in such sum as a majority may require.   To make all contracts and to do all lawful things that may be necessary or proper to carry into effect the object of the association, and to appoint an attorney or attorneys, by instrument under his hand and seal, to execute any or all the duties and powers of the said trustee, including the execution and acknowledgement of deeds of conveyance for any land owned or held by him as such trustee for this association.

Art. 7.   All conveyances to be taken for land purchased, or otherwise acquired by him under this indenture shall be made to and in the name of said trustee, and in all such conveyances as well as in all contracts, to be made herein, he shall, after being named, be described as trustee of the Neshoto Lumbering Company.   But as the design of inserting such description is only to facilitate the more easy indentification of the premises purchased by the trustee for the benefit

of the association, and not to affect the quality or nature of his estate in law or equity, no word creating a trust in said premises shall be inserted in any conveyance, nor shall such description have that effect, or the said trustee be regarded or considered as acting in any other capacity than as the agent of this association.

ART. 8. The trustee shall keep regular books of accounts in which his purchases and sales, moneys received and paid out, and all his doings for this Association shall be entered, which books shall at all times be open to the inspection of every member of the Association.

ART. 9. Any trustee who shall be removed shall within ten days after notice thereof, execute such conveyances and other instruments in writing and under his seal, as may be necessary to invest his successor with all his interest and power, and to carry these articles into effect.

ART. 10. The several persons subscribing this indenture, do hereby grant and convey to the trustee above named, and to all future trustees of this association, full power and authority to do all matters and things before expressed and provided for, and each person subscribing this indenture as an original member, or as the assignee of any share therein, does hereby express his assent to all the said provisions, and does also for himself, his heirs, executors and administrators, covenant, promise and agree to and with each and every other member subscribing this indenture, and to and with the executors, administrators and assigns of every such person, that he, the said covenantor, his heirs, executors and administrators, will well and truly perform, fulfil and keep, as far as in them lies, all and singular the provisions herein contained, and that he and they will do all and every act and thing that may be necessary, and that may be lawfully done, to give full effect to the object and intent of this association.

ART. 11. Meetings of the shareholders shall be held at

Neshoto whenever three of the shareholders shall require the same. Regular meetings of the shareholders shall be held at the above place semi-annually on the first Monday of January and July of each year.

In testimony whereof the original parties to these presents have hereunto interchangeably set their hands and seals this first day of February, 1837, and the other parties to these presents, becoming members of this association, by the transfer of shares therein, have severally set hands and seals thereto, at the time affixed to their respective names, as follows :

A. G. Ellis, 150 shares ; John P. Arndt, 100 shares ; James Duane Doty, 63 shares ; Chester Ford, 125 shares ; Henry S. Baird, 25 shares ; Solomon Davis, 20 shares, transfer of A. G. Ellis ; Henry T. Stringham, 10 shares, transfer of J. D. Doty ; Charles Durkee, 60 shares ; Henry T. Stringham, 130 shares, transfer of A. G. Ellis ; Harvey Durkee, 60 shares, transfer of Charles Durkee.

Received for record January 18th, 1840, at 4 o'clock, P. M.

JACOB M. KINNEY,

Register, Brown Co.

Also a certified copy of the record in bankruptcy, of Joseph Stringham, containing, among other things, copy of a petition dated Feb. 4, 1843, signed and sworn to by Joseph Stringham, schedule of his assets, and indebtedness, and among the former is the following :

" A claim against Henry T. Stringham, for money paid for him, for which I hold as security, a conveyance of certain lands at Neshoto, Wisconsin.                                    $700."

Also copy of decree of bankruptcy and discharge, and the papers appertaining thereto.

To this testimony Taylor and Truesdail objected, on the grounds set forth in objection, marked (2.)   The record was admitted.

WISCONSIN REPORTS. 79

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

The defendants put in evidence the following, marked

"N."

CHARLES E. CLARKE, Assignee of the Estate of Joseph Stringham, TO WESLEY TRUESDAIL:

Original deed in bankruptcy, dated April 15, 1844, acknowledged April 15, 1844, recorded May 19, 1846, in vol. N. of deeds, pages 250, 251, 252 and 253, conveying "all the right, title and interest, claim and demand, which the said Joseph Stringham had at the time of making the decree in bankruptcy, in or to &c.," describing specifically the lands in controversy.

"O."

RAMSEY CROOKS AND WIFE TO WESLEY TRUESDAIL:

Original deed, dated September 27, 1844, acknowledged September 27, 1844, recorded May 24, 1848, in vol. C., of deeds, pages 25 and 26, conveying all their interest in and to 43 shares of Neshoto Company, according to certificates issued to J. D. Doty, numbers 3, 5 and 7; also,

"P."

CHARLES E. CLARKE, Assignee, &c., TO WESLEY TRUESDAIL:

Original deed, dated May 14, 1843, acknowledged May 20, 1843, recorded August 29, 1843, in vol. A., pages 194 and 195, conveying " all the right, title and interest whereof the said Joseph Stringham was seized on the 10th day of February last, in and to any or all lands lying in the County of Manitowoc, in the Territory of Wisconsin, near certain mills, known as the Neshoto mills, being all the lands in said county heretofore conveyed to said Joseph Stringham by Henry Stringham, &c.

"Q."

ALBERT G. ELLIS AND WIFE, JOHN P. ARNDT AND SOLOMON DAVIS TO WESLEY TRUESDAIL:

Original deed, dated February 23, 1844, acknowledged

February 23, 1844, recorded July 1, 1844, in vol. A., pages 264 and 265, conveying all their interest in certain lands therein described.

## "R."

DANIEL WHITNEY TO WESLEY TRUESDAIL:

Original deed, dated May 16, 1846, acknowledged May 19, 1846, recorded May 19, 1846, in vol. N., pages 253 and 254, conveying eight acres; also, 25 patents, numbered from 1 to 25; also, original certificates of stock in the Neshoto Lumbering Company, marked

## "S."

Johnson Davis, indorsed in blank 20 shares, No. 9.

## "T."

James D. Doty, indorsed in blank 23 shares, No. 3.

## "U."

James D. Doty, indorsed in blank 10 shares, No. 7.

## "V."

James D. Doty, indorsed in blank 10 shares, No. 5.

## "W."

John P. Arndt, indorsed in blank 100 shares No. 47.

## "X."

James L. Schermerhorn indorsed in blank 10 shares, No. 42, with assignment to H. T. Stringham and from Stringham to Wesley Truesdail; also, a note and mortgage, marked

## "Y."

HENRY T. STRINGHAM, Trustee of the Neshoto Lumbering Company, TO WESLEY TRUESDAIL:

Original mortgage, dated March 12, 1840, acknowledged March 12, 1840, recorded March 26, 1840, in book B., vol. 1 of mortgages, pages 6, 7 and 8, conveying the lands in controversy to secure the payment of $5000 according to note,

and also original note dated March 12, 1840, for $5000 at six months to Wesley Truesdail, made by Henry T. Stringham, Trustee, &c., indorsed to Isaac Taylor Nov. 27, 1847.

## "Z."

WESLEY TRUESDAIL TO ISAAC TAYLOR:

Assignment of foregoing mortgage, dated December 1st, 1847.

## "AA."

WESLEY TRUESDAIL AND WIFE TO ISAAC TAYLOR:

Original deed, dated November 27, 1847, acknowledged November 27, 1847, recorded December 23, 1847, in vol. D. of deeds, pages 12 and 13.

The depositions of witnesses taken in the case occupy too great space for their admission here: but that of *Wesley Truesdail* is so comprehensive upon all the material points involved, that it is given in full, as a substitute for all the rest; embracing, as it does, the best and most connnected history of the several transactions, to which the attention of the Court was directed.

Interrogatories to Wesley Truesdail:

Interrogatory first. Where do you reside, and what is your age and occupation? Where did you reside, and what was your occupation in the year 1840, and where has been your residence, and what your occupation since that time?— Declare.

Interrogatory second. Do you know the parties to this suit, or any and which of them, and how long have you known them, and which of them?

Interrogatory third. At what time did the Bank of St. Clair, in the State of Michigan, fail to redeem its notes at par?— What was the value of the notes of said bank on the 19th day of May, 1845, on the 1st day of May, 1846, on the 22d

day of January, 1848, and between those dates, and subsequently to the last mentioned date?

Interrogatory fourth. At what time did the Wisconsin Bank, at Green Bay, in the Territory of Wisconsin, fail to redeem its notes at par? and what was the value of its notes subsequently thereto?

Interrogatory fifth. Where did the said defendant, Henry Stringham, reside, and what was his occupation, and what was his condition as to pecuniary matters, from the year 1840 to the year 1847.

Interrogatory sixth. Where did the said defendant, Joseph Stringham, reside, and what was his occupation, and what was his condition as to pecuniary matters, from the year 1840 to the year 1847.

Interrogatory seventh. Did you, in the year 1840, take a mortgage from said defendant, Henry Stringham, for $5,000 upon certain lands situate on or near the Twin Rivers, in the State of Wisconsin? If aye, state in what capacity, and for what consideration, you took the same.

Interrogatory eighth. Did you, in the year 1840, have any conversation with one H. H. Brown, of Detroit, relative to said mortgages? If aye, state what those conversations were.

Interrogatory ninth. Did you ever receive from said defendant, Henry Stringham, any note or notes, signed by Kelley & Collins, of Ohio, or Goddard and Enoch Jones, of Detroit?— If aye, state the date and amount of such note or notes, the terms upon which and the times when you received the same, the payments which were subsequently made upon the same, and how such payments were applied, and at whose request.

Interrogatory tenth. Have you ever, in any conversation with any person, given any different account of the manner in which you held said mortgage, from that given above by you? If aye, what was that account, and with whom was such conversation held?

Interrogatory eleventh. Did you receive a deed of the premises described in said mortgage in 1843, from the assignee of said Joseph Stringham ? If aye, state fully the negotiation which preceded the taking of said deed, the object of taking the same, and give a list of the title papers passed over to you by said Henry Stringham at or about that time.

Interrogatory twelfth. What was the amount of the indebtedness of said Henry Stringham to the Bank of St. Clair, at the time you took said last mentioned deed ?

Interrogatory thirteenth. When did you obtain possession of said premises described in said mortgage, and how and by whose consent, and how long did you retain the same ?

Interrogatory fourteenth. How did you manage the said premises while they were in your possession, and what was the use of said premises worth to you, and how much did you make from the same ?

Interrogatory fifteenth. Did you sell your interest in said premises and said mortgage, to said defendant, Isaac Taylor ? If aye, when, for how much, and in what manner, was the payment made, and what papers or title deeds did you transfer to said Taylor, and when did he take possession of said premises ?

Interrogatory sixteenth. What, in your opinion, were said premises worth at the time you took possession of the same, on the 25th day of June, 1844, and at the time you sold the same to said Taylor ?

Interrogatory seventeenth. What title or equitable interest in said premises did you obtain from Ramsey Crooks, and when did you obtain the same ?

Interrogatory eighteenth. Have you ever had any conversations with Joseph Stringham, relative to a deed of an interest in said premises, made by said Henry Stringham to him, bearing date of 1840, or to a similar deed, bearing date 1844, or to said mortgage of $5,000, or to the indebtedness of said

Henry Stringham to the said Bank of St. Clair, or to the instrument in writing, given by you to said Henry, in 1845 ? If aye, state particularly when, where, and what each of such conversations were.

Interrogatory nineteenth. Do you know, or can you set forth, any other matter or thing which may be a benefit or advantage to the parties at issue in this cause, or either of them, or that may be material to the subject of this, your examination, or the matters in question in this cause? If aye, set forth the same fully and at large in your answer.

Cross-interrogatories.

1st cross-interrogatory. In whose possession are the books of the St. Clair Bank now, and in whose possession have they been for the last six years ?

2. At the time you took the mortgage, what was the amount then actually due from the said Henry T., as per said books, and what amount of the bills of the Bank of Wisconsin were then actually in possession of the said Bank of St. Clair ?

3. Did the Bank of St. Clair keep full and correct books, in the same manner common with other banks ?

4. Please state all the different amounts of the bills of the Bank of Wisconsin taken by the Bank of St. Clair, and at the times when taken.

5. When the bills of the Bank of Wisconsin were received by the Bank of St. Clair, did you, upon the receipt thereof, immediately charge them to the said Henry T. Stringham, or did you at specific times, and at what times, charge the balance on hand, to said Henry T.

6. When you received the bills of the Bank of Wisconsin as cash, were you also in the habit of paying them out as opportunity offered ?

7. Can you give a copy of the account of the Bank of St. Clair with Henry T. Stringham, as appears from said books—if so, annex one to your deposition ?

8. If you produce such a copy, state whether all the items were written on said books at the times they purport to be, and at the times when the transactions severally took place.

9. Who made the several entries on the books of the said bank against said Henry T.; did one person make all the entries?

10. Separately from the books, do you recollect all and what proportions of the items were charged against said Henry T. Stringham, and were you personally cognizant of the several transactions giving the right to charge?

11. If you shall state that a copy of said account was ever furnished to Henry T. Stringham, will you state who drew it off?

12. Among the items of the said account which you rendered, is there a single item, a charge bearing date on May 27th, A. D. 1845, of six thousand three hundred and eight dollars and eighty-two cents "for sundries per statement;" is there such a charge upon either of said books; and if in said account, or upon either of said books, please state particularly, and in detail, what said sundries were, and how each item thereof accrued, giving a minute and circumstantial statement thereof?

13. Did you, or the Bank of St. Clair, receive any notes or securities, or demands from Henry T. Stringham, or from the Bank of Wisconsin, as collateral security? If so, state what notes, securities and demands, and what became of them, whether collected or now in possession of yourself, or whether negotiated by you?

14. If you shall answer that Henry T. Stringham was credited the amounts received or made on said notes, demands and securities, please refer to your books and produce (to be attached to your deposition) a transcript of all the entries on the books on that subject, and state when the entries were made?

15. Did the Bank of St. Clair, or yourself, or any one for you, either recover judgment on any one of such collateral securities, or sell lands on execution upon judgments so recovered, and bid them in? If so, state particulars.

16. If you shall answer that you have made any other disposition of said securities, please state what disposition, and by whose order it was made, and when made, and when the order was given, and whether such order was written or verbal, and who was present besides yourself at the time such order was given?

17. Did you assign or transfer said mortgage of five thousand dollars to the said defendant Taylor, and when, and did you represent to him that the whole amount was due?

18. Did you or the said Bank of St. Clair charge Henry T. Stringham with the money advanced to complainant or his assignee, on the purchase of his interest in the lands in question in this suit, and have you ever rendered or shown an account in which said charge was made?

19. Did said Henry T. at any time keep his safe in the office of the Bank of St. Clair, and did you or said bank at any time and for any cause have possession of such safe?

20. Did Henry T. Stringham usually keep his papers in such safe, or did he keep his papers, or any of them, in the safe of the Bank of St. Clair?

21. Did you or any officer of the Bank of St. Clair ever take from the place of deposit, either in the Bank of St. Clair, or in a safe belonging to said Henry T. in said Bank, any paper or any certificate of stock in said Neshoto Lumbering Company or their articles of association?

22. Did you have such papers in your possession, and how did you get possession of them. If you answer they were delivered to you by said Henry T., please say when and where and under what circumstances and who was present and from what place of deposit they were taken, and who

took them, and how they got into said Henry T's. hands at the time of such delivery, and whether you have any power in writing over said papers given to you by said Henry ?

23. Was a deed made out by said assignee of the said Joseph not describing the lands and at your request or at the request of your agent, exchanged for another ?

24. By what authority did you transfer said mortgage of $5,000 and the other pretended rights of the said bank in said land in question to said defendant Taylor? If it was by virtue of an assignment of the said Bank of St. Clair to you, please give a copy of the articles of assignment ?

25. When did the Bank of St. Clair first fail to redeem its bills in specie at its counter ?

26. Have you or the Bank of St. Clair at any time since the giving of said mortgage surrendered to said Henry T. or to the Bank of Wisconsin any bills of the said Bank of Wisconsin, if so, how many, when, and to whom ?

27. Where are said bills now, in whose possession or control, and to what amount ? Have you ever stated that they were surrendered to said Henry for particular purposes and taken back again, if so, please state for what purpose and how long they were in said Henry's hands, when they were taken back, and why taken back ?

28. Did you write Henry T. Stringham a letter, a copy of which is attached to these cross interrogatories marked "A ?"

29. What was the negotiation with Knapp referred to in said letter, was said Knapp Cashier of the Mineral Point Bank—was the arrangement for the Bank of Mineral Point to assume the liability of the Bank of Wisconsin to the Bank of St. Clair in consideration of an indebtedness from said Mineral Point Bank to the Bank of Wisconsin, or any thing to that effect ?

30. Was the claim against Goddard and others referred to in the said letter the same one afterwards collected on

account of the St. Clair Bank by Williams and Ten Eyck?

31. Was the note against Kelley a note for $2,000, indorsed by Collins & Co.; was it subsequently put into judgment by you or the Bank of St. Clair, and land sold upon the judgment?

32. Were those notes, or either of them, held by the Bank of St. Clair as additional security for the debt against the Bank of Wisconsin?

33. Did said Henry T. in February or at any time following, at Detroit or elsewhere, execute said mortgage of $5,000 as security for any deficiency which might occur upon those securities in the collection thereof or otherwise?

34. Did Henry T. Stringham at the date of said mortgage personally owe to said Truesdail or the Bank of St. Clair anything, and if so, how much, and how did the indebtedness originate?

35. When was the first item against said Henry T. Stringham charged in the books of said bank?

36. Have any of the interrogatories contained in the commission been put to you on a former occasion, and have you given the same answer as on a former occasion when you were before sworn?

37. Will you look at exhibit hereunto annexed marked "B" and say whether the signature W. Truesdail, Cashier, thereunto attached, is your signature? Will you also look at the signature of Elisha Taylor on the back of said exhibit, and say whether it is in your opinion his signature and whether you are acquainted with his signature or hand-writing?

38. Will you look at the exhibit hereunto annexed to this commission and marked "C" and say whether the account is in your hand-writing and is correct, and whether it contains items which make out the sum mentioned in exhibit "B?"

39. State whether the item $123.56, marked as account of Williams & Ten Eyck was for the charges in collecting and prosecuting either of the securities received by the Bank of

St. Clair as aforesaid. Please to explain each item in said account and state what it is for, and why it is charge against said Henry T. Stringham ?

"A"

DETROIT, Jan. 29th, 1840.

DEAR SIR:—Your favor of the 8th inst. came to hand on the 21st; by which I learn to my sorrow, that you have made no progress in your negotiation with Mr. Knapp for the payment of our claim against the Bank of Wisconsin. Would it be of any use for me to write Mr. K. on the subject?

You will bear in mind that I had not asked the Mineral Point Bank to pay our demand during the present pressure, but merely secure it by a credit on her books, or by a deposit of her notes, not to be used before the expiration of a time that may be agreed upon. You will readily understand that my principal object in having such an arrangement made, is to show our inquisitors that the demand is secure, and will be paid at no remote period. If the arrangement *cannot* be made with Mr. Knapp, be kind enough to give me something more tangible than the demand against Goddard and others. Give me something against at least *honest men.* I deem every man whose name is on that note, a deliberate swindler, and under our present laws it is next to impossible to coerce them to payment. I will here repeat a proposition made on a former occasion. If you will pay the balance of our demand after deducting the amount of the note against Kelley, we will accept that note in payment for same amount of your notes. Such an arrangement would leave somewhere about $2,000 for you to pay. It is impossible for me to transfer the amount you have in deposit with us to New York at present, but you may depend on its being done as soon as it can be.

Hoping that you will take the subject here alluded to into due consideration, I remain      Truly your friend,

(Signed)        W. TRUESDAIL, Cash.

There is a strong and constantly increasing excitement against the two banks in this city, and a joint committee has been raised by the legislature to examine them both *simultaneously*.

The Bank of Michigan, with " old guffy" as their captain, are working all sorts of stratagems to get the State funds for the year ensuing, to do which she will have to resume, and Wells will be compelled to follow, or declare a failure. We now have fine sleighing for the first time this winter.

                    (Signed)                    T.
          (Directed)          H. T. STRINGHAM, Esq.,
                                   Green Bay, Wisconsin.

                              " B."

H. T. Stringham,
     1845          To the Bank of St. Clair,          DR.
May 27th.—To balance of account on Ledger,      $522  31
                              DETROIT, Dec. 3d, 1850.

I certify that the above amount appears to the debit of H. T. Stringham on the Ledger of the Bank of St. Clair.

                         W. TRUESDAIL, Cashier.

Indorsed as follows:

In consideration of twenty-five dollars to me paid, I do hereby assign and transfer to Joseph Stringham, of Buffalo, New York, and authorize him to collect the same, so far as I may be authorized, the within debt.

                              S. CORNING.

By DAVIDSON & HOLBROOK, his Attorneys.

                              DETROIT, Oct. 14, 1853.

The within account was sold by me to Solon Corning, under an order of the circuit court for the county of Wayne, and State of Michigan, on the first day of March, A. D. 1851.

                         ELISHA TAYLOR,
                    Receiver of the property and effects
                              of the Bank of St. Clair.

" C."

H. T. Stringham,

| 1845 | To Bank of St. Clair, | | | DR. |
|---|---|---|---|---|
| June 23d.—To amount transferred from D. Tillinghast, | | | | $100 00 |
| Dec. 1st.—To amount Williams and Ten | | | | |
| Eyck account, | | $123 | 56 | |
| " H. C. Knights, def't. | | 10 | 00 | |
| " H. S. Baird, " | | 42 | 75 | |
| " " " " | | 36 | 00 | |
| " F. Borchardt, " | | 10 | 00 | |
| " Draft on J. Stringham, | | | | |
| June, '45, | | 200 | 00 | |
| | | | | 422 31 |
| | | | | $522 31 |

Detroit, Oct., 1850.

To the first interrogatory he says: That he resides in the city of Detroit, and State of Michigan—his age is about forty years—his occupation is principally manufacturing and dealing in pine lumber. That in the year eighteen hundred and forty he also resided in said city of Detroit, and was there engaged in the same occupation, and also in the business of banking and other financial operations; that from said year eighteen hundred and forty to the present time, he has been engaged principally in some one, or all kinds of business, from time to time; that during said last mentioned period, he has spent a portion of his time in the county of St. Clair, and the residue of the time mostly in the city of Detroit— which last mentioned place he has all along regarded as his permanent residence or home.

To the second interrogatory he says: He knows the parties to said suit; Henry T. Stringham he has known twelve years; Isaac Taylor he has known six years; Ramsey Crooks

he has known ten years; Frederick Borchardt he has known seven years. With Harvey Durkee he has no further acquaintance than that derived from having met him once on business. Joseph Stringham he has known for twelve years.

To the third interrogatory he says: The Bank of St. Clair failed and ceased to redeem its notes at par, on or about the second day of May, A. D. eighteen hundred and forty-five; that the notes of said bank, on the 19th day of said May, were worth sixty-two and a half cents on the dollar. On the first day of May, eighteen hundred and forty-six, said notes were worth fifty cents on the dollar. On the twenty-second day of January, eighteen hundred and forty-eight, said notes were worth forty cents on the dollar. That between said dates the market value ranged from forty cents to sixty-two cents on the dollar. And that since the last mentioned date, the market value has ranged from forty to twenty-five cents on the dollar.

To the fourth interrogatory he says: That the Bank of Wisconsin, or the Wisconsin Bank, in Green Bay, in the territory (now State) of Wisconsin, failed to redeem its notes at par, sometime in the year eighteen hundred and forty, according to his recollection, when the market value of said notes immediately fell to about forty to fifty cents on the dollar; and within eighteen months thereafter, to his best recollection, said notes became utterly worthless, and of no value in market, and have continued to be worthless and of no value up to the present time.

To the fifth interrogatory he says: That from the year 1840 to 1847, the said defendant, Henry T. Stringham, has resided, according to the best knowledge, information and belief of deponent, in the said city of Detroit for about the first *five* years of that time, and afterwards in Buffalo, in the State of New York, and in other places in the State of New York, as this deponent is informed and believes; and has during

WISCONSIN REPORTS. 93

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

the latter part of the time been occupied in the business of a clerk; and while he was in Detroit, engaged in the forwarding and commission business; and that, as to the condition of said Stringham, (Henry T.) as to pecuniary matters, from 1840 to 1847, this deponent can only say, that he does not know of his having any considerable amount of money, property, or pecuniary means, nor any such, in fact, except the interest in the property covered by the mortgage to this deponent, as set forth and referred to in the answer of this deponent to the seventh interrogatory, as hereafter given.

To the sixth interrogatory he says: That from the year 1840 to 1847, the said complainant, Joseph Stringham, resided in Buffalo, in the State of New York, for the greater portion of the time, and was engaged in the business or occupation of banking and brokerage; and as to his pecuniary matters, this deponent believes, and has reason to believe, from all the knowledge derived and information received from the said Joseph himself, and from other sources, that the said Joseph was, during the period last aforesaid, poor, destitute of any considerable amount of money or property, and without the means of raising or paying any considerable amount of money or indebtedness, in case he had desired or attempted to do so.

To the seventh interrogatory he says; That in the year 1840 he did take a mortgage from said defendant, Henry T. Stringham, for five thousand dollars, upon certain lands, situated on or near Twin Rivers, in the State of Wisconsin, which said mortgage was executed March 18th, 1840, and was given in reality as collateral security, to secure to the Bank of St. Clair the eventual payment and redemption of the bills of the Bank of Wisconsin, taken, and that might be taken, or received by the Bank of St. Clair. He, this deponent, being at that time cashier of said Bank of St. Clair, and acting in the matter as the agent and trustee of said

Bank of St. Clair, and in no other capacity, which fact was fully known and understood by the said Henry T. Stringham. And further, that the said amount of five thousand dollars, or nearly that amount of said bills of said Bank of Wisconsin, had then already been taken, and were then remaining on hand in said Bank of St. Clair, at the time of the execution of said mortgage, besides other amounts of said bills, which were after that time taken and received by said Bank of St. Clair; and in all, to a much larger amount than the sum so secured by said mortgage. All of which bills were so taken and received by said Bank of St. Clair from the first, at the solicitation and request of said Henry T. Stringham, and upon his express and repeated guaranty and promise of indemnity and security, he, the said Henry T. Stringham, being at that time interested in said Bank of Wisconsin.

To the eighth interrogatory he says: That he has no distinct recollection of having had, in the year 1840, any conversation with one H. H. Brown, in Detroit, relative to said mortgage, nor what that conversation was, if any such was had.

To the ninth interrogatory he says: That he does recollect having received at one time, from Henry T. Stringham, certain notes, signed or made by said Kelley & Collins, of Ohio, and by Goddard and Enoch Jones, of Detroit. On which notes a portion of the amount was eventually collected, and some property was bid off on execution or executions, issued on a judgment or judgments, obtained for a part of the same. That he cannot recollect the date or precise amounts of said notes, but is positive that the whole amount of money and property ever received, collected, bid off, or in any way realized out of, or from said notes, were from time to time, with the full knowledge and by the direction of said Henry T., credited to the account of the said Henry T. with said Bank of St. Clair, or applied as aforesaid, so far as the same went to the

payment of liquidation of the liabilities of said Henry T., to said bank.

To the tenth interrogatory he says: That he has no recollection of ever having given any different account of the manner or purpose, in or for which he held said mortgage, than as hereinbefore by him given or stated. He has an indistinct recollection of having had conversations with different persons, at different times, in regard to said mortgage and said transactions generally, but is positive that he never intended to be understood as giving a different account of the matter, from that now herein above given, and that the account now given is correct and true.

To the eleventh interrogatory he says: That he did receive a deed of the premises described in the mortgage in 1343 from the assignee in bankruptcy of said Jos. Stringham. After the giving of the said mortgage, up to the time of this deponent's receiving said deed, neither said mortgage nor the debt for which it was given had ever been paid, annulled, satisfied or discharged, and there had been no time at which the Bank of St. Clair did not hold a considerable amount of the bills of said Bank of Wisconsin, for the redemption or payment of which there was no other security than said mortgage, and it was admitted and understood by and between this deponent and the said Henry T. and Jos. Stringham at the time of the purchase of said land by this deponent from the assignee in bankruptcy of the said Joseph Stringham, that said mortgage then remained unannulled and wholly unpaid, and also the said Henry T., after the giving of the said mortgage, became further indebted to the Bank of St. Clair for a balance due to said Bank from the firm of Chester & Stringham, which said Stringham individually assumed to pay in consequence of an arrangement in that behalf between the Bank of St. Clair on the one part, and the said Chester & Stringham on the other part, by virtue of which arrangement, the said Chester was

96 WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et. al.

released from his liability for the indebtedness of said Chester & Stringham to said Bank, and the individual assumption and liability of said Stringham for said liability of said firm which had then failed in business, was given by said Stringham and accepted by said Bank of St. Clair. And also after the execution of said mortgage, said Henry T. became further indebted to said Bank of St. Clair, for moneys had and loaned at different times, and deponent, finding said Henry T. to be then largely indebted to the said Bank of St. Clair, and far beyond the amount covered by said mortgage, he, this deponent, became anxious to obtain payment or further security from said Henry T., and with that view negotiated with said Henry T. to obtain from him a further mortgage or conveyance of his interest in said lands and premises in said mortgage, first above referred to, mentioned, and also a transfer of his stock and interest, whatever it might be, in the so-called Neshoto Lumbering Company, which negotiation finally resulted in an arrangement between said Henry T. and this deponent, to the effect that the whole of said stock should be transferred, and the whole of said lands held by said Henry T., whether held by said Henry T. in his own name or in the name of his brother, the said complainant Jos. Stringham, should be conveyed to this deponent to be by him held in trust for said Bank of St. Clair, which said arrangement was made only a few days before said Joseph filed his schedule and petition for the benefit of the bankrupt law, and as the said Henry T. then informed this deponent, that at some time after the execution of said mortgage and before the time of the negotiation last above referred to, he, the said Henry T., had conveyed his interests in said lands to said Joseph Stringham, and it became necessary to obtain a conveyance of said lands from said Joseph, and to effect and carry out said arrangement said Henry T. wrote and delivered to this deponent a letter of request directed to said Joseph,

requesting and directing him, said Joseph, to convey said lands to this deponent, which said letter of request was dated on or about February 1st, 1843, and was delivered by the said Henry T. to this deponent and by this deponent inclosed in a letter dated February 4th, 1843, to the agent of this deponent, D. Tillinghast, Esq., of Buffalo, where the said Joseph then resided, for the purpose of obtaining the conveyance referred to, which said letter of request was by said agent presented to said Joseph on the 14th day of February, 1843, and a conveyance requested accordingly, to which request the said Joseph then replied, that he had the day before that gone into bankruptcy, and had, among other things, included his interest in the lands in question in his schedule, and could not, therefore, do anything about it. And afterwards, about the 1st of March, 1843, when again requested by said agent to make said conveyance, the said Joseph stated that he would have made said conveyance in accordance with said written request of the said Henry T., if he, said Joseph, had been requested to do so before he had made out his schedule in bankruptcy, but under the existing circumstances he could not do so then. It was therefore agreed, arranged and understood between this deponent and the said Henry T. and Joseph, as the only remaining way to carry out said arrangement, that said land should be bid off by and for this deponent at the sale of the assets of said Joseph in bankruptcy, and the said Joseph then agreed to bid off, or cause to be bid off the same, for the benefit of this deponent, at such sale, and did so bid off the same at such sale, which took place on the 8th day of May, 1843, for the sum of $100, and on the next day thereafter, to wit: May 9th, 1843, said Joseph informed said agent of this deponent that he, said Joseph, had so bid off the same for the sum of $100, that said bid was in form in the name of said Joseph, and that this deponent could have the benefit of said bid by paying said amount of

one hundred dollars, and finally obtained a conveyance of said property from said assignee in bankruptcy, which said conveyance, at the suggestion of said Joseph himself, was made direct to this deponent.

It was well known, agreed and understood by the said Henry T. Stringham, Joseph Stringham and this deponent all along, before and at the time of said negotiation and afterwards, that said transactions and all interest therein was in reality between the Bank of St. Clair on the one part and the said Henry T. on the other part, and that the real object was by this means to obtain further security for the then entire indebtedness of the said Henry T. to the said Bank of St. Clair; that this deponent was only acting as agent and trustee for the said Bank of St. Clair, and that said Joseph was not in equity and right the real owner of said lands and property or any part, portion or interest in the same, nor any lien or incumbrance therein; and, further, that before the said Joseph would consent that this deponent might have the benefit or said bid, and before he would consent that said conveyance might be made to this deponent, he, the said Joseph insisted, as a "*sine qua non*" or condition precedent, that before taking said conveyance this deponent, or his agent for him, should execute and deliver an instrument in writing declaring that said conveyance to this deponent was "in the nature of a mortgage" to secure a debt from the said Henry T. to said Bank of St. Clair, or that if said conveyance were then delivered to said agent of this deponent, he, said agent, should only hold said conveyance as an escrow until such written declaration should be obtained either from this deponent or from said agent; and that if this deponent should decline or refuse to execute such written declaration, he, this deponent, should not have the benefit of said bid nor receive the conveyance aforesaid; which said understanding of said Joseph will more fully and particularly appear by reference

to the paper hereto attached marked "A" and headed " Joseph Stringham to D. Tillinghast, Esq.," and which is a correct copy from the original, now in the possession of this deponent, which original is in the hand-writing of said Joseph Stringham, and bearing date May 20th, 1843, and was sent or handed by said Joseph to the said agent of this deponent on or about the day of the date thereof, and the said conveyance was then received and for the time held as such escrow, by said agent; and while said conveyance was so held as such escrow by said agent, a further mutually satisfactory conversation was held in the city of Detroit between this deponent and the said Henry in reference to said transaction, and to said original understanding in that behalf as hereinbefore set forth, in which this deponent, among other things, fully expressed his readiness either then or at any other time when said Henry T. might think proper to ask for the same, to execute in that behalf such written declaration as referred to above, and in said paper or writing marked "A;" at which time the said Henry T. expressed himself entirely satisfied, and with the understanding that at some then future or convenient season, he, the said Henry T., when he might desire the same, would call on this deponent for the same (said declaration) in writing. He, the said Henry T., immediately thereafter wrote and delivered to this deponent, to be sent forward, in order to accomplish the object contemplated, a letter to his brother, the said Joseph Stringham, of which the writing hereto annexed, marked "B" and headed "Henry T. Stringham to Joseph Stringham" is a correct copy by which said letter, which is dated May 25, 1843, the said Henry T. informed the said Joseph that he, said Henry T., had arranged matters with this deponent in regard to the character of the said conveyance of the said so-called Neshoto lands, and therein requested and directed the said Joseph to convey the said

lands aforesaid to this deponent. Which said letter was immediately thereafter, to wit—on the 26th day of May, 1843, forwarded by this deponent to his, this deponent's agent at Buffalo, and by said agent presented to said Joseph, and upon presentation thereof, said Joseph consented that said conveyance should pass and be delivered up to this deponent, which was done accordingly. And, further, that after the time when said conveyance was so passed and delivered over to this deponent said matters remained in the same condition and without anything further being done until about the 19th day of May, 1845, excepting that shortly thereafter, that is to say, some time in the month of June in said year 1843, this deponent entered peacably upon and took possession of said lands and property so as aforesaid mortgaged and conveyed to him, and this he did with the full knowledge and approbation and advice of the said Henry T. Stringham, and continued thereafter in continued possession of said property and lands up to January, 1845, at which latter period he delivered possession of the same to the said Isaac Taylor, one of the defendants in said suit, hereinbefore, in the caption to this testimony described. And, further, that on or about the 19th day of May, 1845, being about seventeen or eighteen days after the failure of the said Bank of St. Clair, the said Henry T. called upon this deponent, and then, for the first time, requested this deponent to execute and deliver to him, said Henry T., an instrument in writing or declaration of trust respecting the real nature of said conveyance as aforesaid, and accordingly this deponent did then or the next day thereafter and in fulfilment of said original understanding and agreement, in that behalf, execute and deliver to the said Henry T. said instrument in writing, or declaration of trust, in such language, form and manner as he, the said Henry T., then advised, directed and requested, and did in and by said instrument in writing, or declara-

tion of trust, acknowledge and declare that he held said lands and property in trust, to secure to said Bank of St. Clair the amount then due and owing to said bank from said Henry T.; and did therein and thereby consent and agree that in case he, the said Joseph Stringham, should on or before the first day of January then next ensuing, to wit—January 1, 1846, well and truly pay or cause to be paid the full amount of said indebtedness of said Henry T. to said Bank of St. Clair in the manner stated in said instrument in writing particularly, that then this deponent would release and quit claim all his interest in said lands and property to the said Joseph Stringham, which said instrument in writing and declaration of trust bears date the 19th day of May, 1845, and the certificate of acknowledgement thereon bears date the 20th day of May, 1845, a copy of which is hereto attached marked " C " and further identified by the certificate and signature of this deponent, as are also the exhibits hereinbefore referred to and marked "A" and " B," and further, that on or about the same day on which the said instrument in writing or declaration of trust is dated, to wit—on the 19th day of May, 1845, an examination and settlement was made and had by this deponent and said Henry T. of the accounts and affairs between said Bank of St. Clair and said Henry T. by which it appeared and was ascertained and agreed that the balance then due from the said Henry T. to said Bank of St. Clair amounted to twelve thousand five hundred and eighty-two dollars and thirty-seven cents (12,582 37) for which said balance said Henry T. then gave his note, payable in the liabilities of the said bank, and also gave his, said Henry T's., written acknowledgment to that effect on the same paper containing said instrument in writing or declaration of trust, a copy of which acknowledgment or certificate is hereto attached and marked " D," and hereby referred to for a more full and particular statement of the contents of

the same. The said amount of twelve thousand five hundred and eighty-two dollars and thirty-seven cents was the actual and *bona fide* balance at that time due and owing from said Henry to said Bank of St. Clair, with the exception that there should have been added to said balance the sum of five hundred and twenty-two dollars and thirty-one cents, for other money advanced to and paid for said Henry T., which was overlooked and omitted to be included in said settlement, making the real balance, then justly due from said Henry T. to said Bank of St. Clair, thirteen thousand one hundred and four dollars and sixty-eight cent ($13,104 68) which said amount included the entire indebtedness of the said Henry T, to the said Bank of St. Clair, as well on account of his said original undertaking for the said liabilities of said Bank of Wisconsin, as also for said balance due from said firm of Chester and Stringham, and for other liabilities for advance of money on his separate and individual responsibility and account, and included, of course, the amount covered and secured by said five thousand dollar mortgage. And, further, that at or about the time of receiving said conveyance from said assignee in bankruptcy to this deponent, or as soon thereafter as could conveniently be done, the said Henry T., in part fulfilment of the original understanding among all the parties in that behalf, and for the better security and protection of the right, title and interest of this deponent in the premises, gave up, passed over and delivered to this deponent certain title deeds, conveyances, certificates of stock in said Neshoto Lumbering Company, duly assigned, and other writings, which, as deponent supposes and believes, and as he was then assured by said Henry T., covered and conveyed to this deponent, in connection with said conveyance from said assignee in bankruptcy, all the right, title, claim and interest of the said Henry T. and the said Joseph Stringham, in and to the said property, lands and premises, and in said lumber-

ing company, in compliance, and so far fulfillment, of the understanding and agreement among all said parties in that behalf. But this deponent cannot give a list in detail of said deeds, certificates and other writings referred to, because he kept no memorandum of them, and cannot, therefore, particularize and describe them, as they long since passed from his possession, and were by him delivered over to the said Isaac Taylor, with other papers, at the time of the sale and conveyance of said property, by this deponent, to said Isaac Taylor, about the month of November, A. D. 1847.

To the twelfth interrogatory, he says : That the amount of the indebtedness of the said Henry T. Stringham to the Bank of St. Clair, at the time he took said last mentioned deed, to-wit : the deed from the assignee in bankruptcy, was a large amount, but how much precisely, he cannot recollect.

To the thirteenth interrogatory he says : That the whole and correct answer to this interrogatory is embraced and included in his answer given to the eleventh direct interrogatory, and he refers to the same as his answer to this, the thirteenth direct interrogatory.

To the fourteenth interrogatory he says: That the said premises, while in his possession, were managed under his general supervision and direction, and according to the best of his skill and ability. The immediate superintendence and management of the same being continued throughout in the hands and local control of Frederick Borchardt, the same person who was previously the agent and manager of said property and business, under said Henry T. Stringham, and that the use of said property and premises was, under the circumstances, and in the condition the same were then in, not worth anything. That he never received or realized a single dollar of benefit or profit ; but on the contrary, he states that, in order to take care of and protect said property, and to carry on the business then conducted, he was forced

to and did necessarily pay and expend a large sum of money over and above all that was ever realized for and from the same, to-wit: to the amount of from twelve to fifteen hundred dollars, as nearly as he can now ascertain. The exact amount of such excess of expenditures over the receipts, he is at present unable to state, because some of the claims against him, on that account, are still unsettled.

To the fifteenth interrogatory he says: That he did sell all his right, title and interest in the premises, property and lumbering company, to said defendant, Isaac Taylor; which sale took place in November, A. D. 1847; and that the sum *bona fide* paid by said Isaac Taylor to him for said property and interest, was four thousand two hundred dollars, ($4,200); of which sum the said Taylor paid down in cash, at the time of the said sale and conveyance, about one half of the amount, and for the other half, gave drafts on New York, at some sixty or ninety days; which said drafts were paid in cash in full, at maturity; and further, that at the time of such sale and conveyance to said Taylor, this deponent passed over and delivered to said Taylor all the title deeds, papers, and writings relating to said property, which he, this deponent, had before then received from the said Henry T., as aforesaid: the conveyance from said assignee in bankruptcy, together with all the certificates of stock in said lumbering company, and all the deeds and papers relating to said property, which he, this deponent, had received from all other persons; and also at the same time executed and delivered to said Taylor a quit claim deed, conveying, and intending to convey to said Taylor, all the right title and interest of this deponent in said property; and also, at the same time, assigned and delivered over to said Taylor said five thousand dollar mortgage from said Henry T., and also the five thousand dollar note against said Henry T., secured by said mortgage; and also, at the same time, in connection with the other assignees

of the said Bank of St. Clair, he, this deponent, being one of the assignees, transferred, assigned, and delivered over to said Taylor, the said note against said Henry T., for the said sum of twelve thousand five hundred and eighty-two dollars and thirty seven cents; and further, that he, this deponent, immediately upon the sale and conveyance of the said property to said Taylor, in the month of November, 1847, gave his written order upon his agent, Borchardt, to surrender up possession of said premises to said Taylor, but said Taylor did not go into full, actual possession of said premises, until some time in the month of January, A. D. 1848.

To the sixteenth interrogatory he says: That he has no estimate, and has never formed any judgment or opinion as to the real value of said property at any period, as he never contemplated holding the same permanently; but always, at the period mentioned, had hoped and expected that the same would have been redeemed.

To the seventeenth interrogatory he says: That some time after the said conveyance from the said assignee in bankruptcy, and before said sale to said Taylor, the said Ramsey Crooks transferred to this deponent all his, said Ramsey's interest and stock in the said so-called Neshoto Lumbering Company, by assignment and delivery of the certificates of stock, and also conveyed, by quit claim deed, all his, said Ramsey's, title and interest in said lands and premises; but the precise date of such transfer and conveyance from said Ramsey, he cannot now state; and therefore, for that purpose, refers to said certificates and deed, which were delivered over to said Taylor among the other papers before referred to.

To the eighteenth interrogatory he says: That he has frequently had conversations with the said Joseph Stringham, in reference to all said matters referred to in said interrogatory, and in relation to said transactions generally; but he cannot now recollect the particular times, places, or occasions

of such conversations, nor the exact conversation or language used, further than that the said Joseph was all along informed and well knew all the negotiations, dealings and transactions in this behalf, at the time when the same were had or occured, and always consented and participated in the same; and the said Joseph, since the 19th day of May, 1845, when the said amount of indebtedness of said Henry T. to said Bank of St. Clair was agreed upon and reduced to writing by said Henry T., as aforesaid, has, in conversation with this deponent, repeatedly recognized said debt of said Henry T. as a valid existing encumbrance on said property, and has pretended to be making efforts to pay and satisfy the same.

To the nineteenth interrogatory he says: That he knows nothing further material or beneficial to either party, or material to the subject of the examination, excepting the statement according to his best recollection and belief, that the amount of the said debt held by the Bank of St. Clair against Henry T. Stringham was less at the date of said declaration of trust to Joseph Stringham than at the date of said conveyance from the assignee in bankruptcy.

                                WESLEY TRUESDAIL.

To the first cross-interrogatory he says: That the books of account of the Bank of St. Clair are now and for the last six years have been in the possession and control of the assignees of said bank, to-wit: this deponent, E. Smith Lee, and Ebenezer Anderson, all whom reside in the city of Detroit.

To the second cross-interrogatory he says: The amount of the bills of the Bank of Wisconsin actually in the possession of the Bank of St. Clair at the time he took the said mortgage for five thousand dollars from the said Henry T. Stringham, does not appear on or from the books of the Bank of St. Clair, but from his best recollection there was then on hand and remaining in said bank of St. Clair at the time of taking said mortgage, to-wit: March 12th, 1840, an amount of the bills

of the Bank of Wisconsin equal, or nearly equal, to the said amount of five thousand dollars, and this then constituted the indebtedness or liability of said Henry T. Stringham. As appears from the books of the bank of St. Clair, there was ninety-nine dollars and eighty three cents balance due to said Henry T.

To the third cross-interrogatory he says : That said Bank of St. Clair did keep full and correct books, which, so far as he is informed were, in general, similar to those commonly kept by other banks.

To the fourth cross-interrogatory he says: That he has no means of knowing and cannot state the different amounts of the bills of the Bank of Wisconsin, that were from time to time taken by the Bank of St. Clair, nor the several times when such amounts were taken. As said bills were taken and received from day to day in the ordinary course of banking business, in the same manner as other bank bills and money, and were therefore included in the general cash accounts.

To the fifth cross-interrogatory he says : That when the bills of the Bank of Wisconsin were received by the Bank of St. Clair, they were not immediately upon the receipt thereof charged to said Henry T. Stringham, but were afterwards reckoned in as an item of charge against him, when it was subsequently ascertained what amount of said bills remained unredeemed and not otherwise provided for. The precise time or times, or dates of such charges, this deponent does not recollect and therefore cannot state.

To the sixth cross-interrogatory, he says: Yes.

To the seventh cross-interrogatory he says: That he supposes that it would be possible for him to give a copy of the account, if he had time to do so, but that it is practically impossible for him to do so at present, because said account is a long one, contained in many books, and running through many years, and would require much time and labor to exam-

108        WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

ine said books and copy said account in full, and would, he thinks, occupy the time of a competent clerk for many days and possibly weeks, to accomplish it, and would, moreover necessarily employ the time and attention of this deponent for a long time to enable him to set forth the same as required, which time and attention it is now impossible for him to bestow, by reason of his numerous other important and pressing engagements. And he further says that at the time of said settlement, the said Henry T., then examined it to his satisfaction, and at the same time said account was all drawn off in a book and delivered over to the said Henry T., which said book contained said account in full. And said account so drawn off in said book was and is a correct copy from the accounts on the books of the bank, and contained the items and amounts of charges against said Henry T., in favor of said bank, as the same were then adjusted and agreed upon by and between the said Henry T. and this deponent, which said book containing said account was retained and taken away by said Henry T., and which said book containing said account, this deponent has since then seen in the hands and possession of the said Joseph Stringham in the city of Buffalo.

To the eighth cross-interrogatory he says: That his reasons for not giving a copy of said account at this time, are given and contained in his answer to the 7th cross-interrogatory above, and that so far as he knows and can now recollect, all the items of said account were written on said bank books at the time they purport to have been or about those times.

To the ninth cross-interrogatory he says: That his best recollection is, that the entries referred to were made by the book-keepers and clerk at the time employed by the bank in the same manner that other entries in general were made in said books, and cannot remember whether all said entries referred to, were made by one person or not, nor does he now

recollect the name or names of the persons who made said entries.

To the tenth cross-interrogatory he says : That separately from the books he cannot now remember all the items charged against said Henry T., nor any of said items so as to be able to set forth the same with particularity as to date and amount. The length of time which has since elapsed, and the vast number of items and accounts of a similar character with other persons which have engaged his attention, renders it impossible that he should recollect items and date, and to the best of his recollection he was personally cognizant of the several transactions giving the right to charge.

To the eleventh cross-interrogatory he says : That he does not now remember who drew off said account.

To the twelfth cross-interrogatory he says: That he cannot remember whether there was among the items of said account rendered, any charge dated May 27th, 1845, or not, nor if so, can he now recollect the amount of said item of charge, if any were made, for sundries as per statement, nor whether there is any such charge on either of said books, nor can he now state particularly and in detail what said sundries were, nor how they severally accrued. But he does remember distinctly that all said items of charge were duly looked over, adjusted, examined and agreed upon by and between said Henry T. and this deponent, as then due and owing from said Henry T. to said Bank of St. Clair, and according to the best recollection and belief of this deponent, the items and charges in said account rendered, corresponded with the items and charges in said books.

To the thirteenth cross-interrogatory he says : That he has no recollection of ever receiving any other notes, securities or demands as collateral security for the liabilities of the said Bank of Wisconsin than those already referred to in his answer to the 9th direct interrogatory, to which he refers as his answer here.

To the fourteenth cross-interrogatory he says : That he has no further answer to make than to refer to his answer already given to cross-interrogatory 13, and his answer to the foregoing direct interrogatory 9, and so far as his statement contained in said two answers referred to are responsive to this interrogatory, the same are adopted here as his answer. That he can make no transcript from the books of the Bank of St. Clair in reference to the matter.

To the fifteenth cross-interrogatory he says: That he cannot answer this interrogatory any further or more particularly than it is already answered in his said above answer to the ninth direct interrogatory to which he refers for his answer here.

To the sixteenth cross-interrogatory he says : That he can only give the same answer here as that already given to the above ninth direct interrogatory.

To the seventeenth cross-interrogatory he says : That he did assign and transfer said five thousand dollar mortgage to the said defendant Tayor, sometime in the month of November, 1847, as he has already above in part answered to the fifteenth direct interrogatory, and that he did represent to said Taylor at that time that the whole amount of said mortgage was due.

To the eighteenth cross-interrogatory he says : That his present recollection is that said item of $100 was kept on a memorandum or a voucher against said Henry T., and was so omitted at the time of settling said account as aforesaid. That he had rendered an account showing it.

To the nineteenth cross-interrogatory he says : Never to his recollection.

To the twentieth cross-interrogatory he says: That he knows nothing about any safe of the said Henry T., nor has he any recollection that the said Henry T. ever kept any of his papers in the safe of the Bank of St. Clair.

To the twenty-first interrogatory he says: That he did not, nor did any other person to his knowledge.

To the twenty-second cross-interrogatory he says: That all the papers of the kind and character referred to, that he ever had in his possession, came to him by delivery from said Henry T. and said Joseph Stringham, or by the knowledge and consent of the said Henry T. And for further answer to this question he refers to his statement responsive to this in his foregoing answer to direct interrogatory 11. Adopting the same statement, as to so much, as his answer here, that he cannot now state anything further or more particular in answer to this cross-interrogatory, excepting that he does remember that in further part fulfillment of the original understanding and agreement in that behalf, the said Henry T. did, long after, that is to say, several years after the conveyance to this deponent by or from the said assignee in bankruptcy, assign and transfer to this deponent, certificate or certificates of stock in said Neshoto Lumbering Company.

To the twenty-third cross-interrogatory he says: That the first deed referred to was deemed insufficient in its description of the property, and therefore a second deed was obtained, with the knowledge and co-operation of the said Henry T. and Joseph Stringham.

To the twenty-fourth cross-interrogatory he says: That he transferred said five thousand dollar mortgage by virtue of his legal interest therein, and of the position which he held in reference to the Bank of St. Clair, as its agent and trustee in that behalf.

To the twenty-fifth cross-interrogatory he says: On the 2d day of May, 1845.

To the twenty-sixth cross-interrogatory he says: That at one time, but the precise time he cannot now state, he did deliver to the said Henry T. a quantity of the bills of the Bank of Wisconsin, at the request of the said Henry T. for a purpose

which he then explained, which said bills were subsequently returned to said Bank of St. Clair by the said Henry T.

To the twenty-seventh cross-interrogatory he says: That said bills and liabilities are now in the possession of this deponent and amount by count nominally to five thousand eight hundred and twenty-two dollars, and further as he has hereinbefore stated, said bills were at one time taken away by said Henry T. as is stated in this deponent's answer to the 26th cross-interrogatory. Said bills were so then taken, away by said Henry T. for some particular purpose which he then explained, but the particulars of which are not now recollected by this deponent. He cannot recolle: how long said bills were in the possession of the said Hei ry T. nor the precise time when they were brought back to said Bank of St. Clair by said Henry T. and by him re-delivered to said Bank, with the express understanding, admission and declaration by said Henry T that said five thousand dollar mortgage was then still good and valid, subsisting unpaid and unannulled.

To the twenty-eighth cross-interrogatory he says: That he has no distinct recollection on the subject. But from his best remembrance, and on examination of his letter book, he says he did write such letter.

To the twenty-ninth cross-interrogatory he says: That he has only an indistinct and general recollection in reference to the subject of this question. But believes his object was, if possible, to make some arrangement favorable to the Bank of St. Clair, in reference to said debt. But cannot state anything further or more particularly.

To the thirtieth cross-interrogatory he says: He supposes the note against Goddard and others, referred to in said letter, to be the same which was at one time in the hands of Williams and Ten Eyck, for collection. But his recollection now is, that said note was not collected by said Williams and Ten Eyck, but that some lands were turned out by said Enoch Jones on

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

said notes, or on the judgment obtained on said note, which lands, or the proceeds of the sale, or value thereof, was allowed, credited and accounted for fully to said Henry T.

To the thirty-first cross-interrogatory he says: My recollection is in the affirmative, although I have no distinct remembrance of any particulars on the subject.

To the thirty-second cross-interrogatory he says: Said notes were originally passed over to, and held by, the Bank of St. Clair, with the understanding that the amount which might be collected upon them should be passed, on the books of the Bank of St. Clair, to the credit of the said Henry T.; and the amounts collected on said notes were passed to the credit of the said Henry T. on the books of said bank. But such credits were never applied to the redemption of said bills of the said Bank of Wisconsin, nor to the payment or discharge of said five thousand dollar mortgage. But, on the contrary, the whole of the amount so collected on said notes, were, by the express request and direction of the said Henry T., applied to the payment and liquidation of other indebtedness and liabilities of said Henry T. to said Bank of St. Clair.

To the thirty-third cross-interrogatory he says: No.

To the thirty-fourth cross-interrogatory he says: He does not now recollect any further or other personal indebtedness or liabilities of the said Henry T. to the Bank of St. Clair, at the time of the execution of the mortgage referred to, except as that stated and explained in the foregoing answer of this deponent to the above seventh direct interrogatory, to which he refers, and adopts as his answer here.

To the thirty-fifth cross-interrogatory he says: He does not recollect. Upon examination of the books of said Bank, he answers the 20th day of August, 1839.

To the thirty-sixth cross-interrogatory he answers: Yes.

To the thirty-seventh cross-interrogatory he says: It is my signature; and I am acquainted with the hand-writing of

Elisha Taylor; and believes the signature referred to to be his.

To the thirty-eighth cross-interrogatory he says: It is my hand-writing, and I believe it to be correct; that the items therein stated make out the sum stated in exhibit "B," although there appears to be a clerical error in stating the date of the year, in connection with the statement of the amount, as due on said exhibit "B," where said year is stated as "1845," but should be 1846, or some year subsequent to 1845 and previous to 1851.

To the thirty-ninth cross-interrogatory he says: He thinks, according to his best recollection on the subject, that said charge of $123.56 was for the fees and charges of said Williams and Ten Eyck, for their professional services, &c., in endeavoring to collect said note against said Goddard and Jones. But he has now no distinct recollection of particulars or items in reference to the matter, save that the one hundred dollars charged is the amount paid assignee in bankruptcy for the deed of the property described in the said mortgage, and sold among the assets of said Joseph Stringham, and the two hundred dollars charged, which was a draft of Henry T. Stringham on Joseph Stringham, returned dishonored. As to the other items he does not recollect. Baird and Borchardt were agents of Henry T. Stringham, in connection with the Neshoto lands or concerning them, and had some charge of said Henry T.'s interest there.

Joseph Stringham to D. Tillinghast, Esq.:

"A."

"Mr. Tillinghast,

"Dear Sir:—I have just received a letter from my brother, saying that the conveyance to Mr. Truesdail is in the nature of a mortgage to secure a debt due from him to the Bank of St. Clair, and that he wants me to take from you a memorandum to that effect; to this I suppose you will have no objection. "Yours, &c., J. STRINGHAM.

"Buffalo, May 20, 1843.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

"If you prefer it, I have no objection to your paying the $100 to Mr. Clark, and taking the conveyance to hold as an escrow until you are either authorized yourself to execute a paper like the above, or Mr. Truesdail executes and delivers one himself; if he declines doing so, then I am at liberty to pay the $100 and keep the title."

This, the foregoing, is the paper referred to in my testimony, to which it is attached, and which is therein designated as "A," and as headed "Joseph Stringham to D. Tillinghast."

WESLEY TRUESDAIL.

Detroit, January 9th, 1854.

Henry T. Stringham to Joseph Stringham :

"B."

DETROIT, May 25, 1843.

"MR. JOSEPH STRINGHAM,

"DEAR SIR:—I have arranged matters with Mr. W. Truesdail, in regard to the *character* of the conveyance of the Neshoto lands. You will please execute a deed to him of *all your interests* in the lands under title from me or others heretofore, and this will close the matter so far as the present is concerned. The stipulations in the matter will be arranged by Mr. Truesdail and myself.

"Your affectionate brother,

"H. T. STRINGHAM."

This, the foregoing, is the writing or exhibit referred to in my testimony, to which it is attached, and which is therein designated as "B," and is headed "Henry T. Stringham to Joseph Stringham."

WESLEY TRUESDAIL.

Detroit, January 9th, 1854.

" C."

" To ALL WHOM IT MAY CONCERN:

" *Whereas,* Henry T. Stringham, and Sarah T. Stringham, his wife, by their deed, bearing date the seventh day of January, in the year eighteen hundred and forty, and recorded in the register's office of Manitowoc county, in the territory of Wisconsin, Book A., vol. I., pages 58 and 59, did convey unto Joseph Stringham, of Buffalo, in the State of New York, the undivided three-fourths of certain lands therein described, and commonly known as the Neshoto lands; and whereas, I, Wesley Truesdail, did purchase of the assignee in bankruptcy of the said Joseph Stringham, all of his interest in the said lands, which I hold in trust for purposes hereinafter expressed; and whereas the said Joseph Stringham, subsequent to his discharge in bankruptcy, did purchase of the said Henry T. Stringham his remaining interest in the said lands; and whereas the said Henry T. Stringham is indebted to the Bank of St. Clair, now know ye that I, the said Wesley Truesdail do hereby declare and covenant that I hold the said lands in trust to secure said indebtedness, and that if the said Joseph Stringham shall well and truly pay or cause to be paid to me, or the assignees of the Bank of St. Clair, the amount of the indebtedness of the said Henry T. Stringham to the Bank of St. Clair, in the notes or other liabilities of the Bank of St. Clair, or in cash on or before the first day of January, in the year eighteen hundred and forty-six, I will, and my heirs, executors or administrators shall convey to the said Joseph Stringham, his heirs or assigns, all of my interest aforesaid, and all the title which I hold in and to the said lands.

In witness whereof, I have hereunto set my hand and seal, this nineteenth day of May, eighteen hundred and forty-five.

(Signed)          " WESLEY TRUESDAIL, L. S.

" Signed, sealed and delivered in presence of

" E. HEUITT,

" ED. ANDERSON."

"D."

" DETROIT, May 19, 1845.

"The amount due the Bank of St. Clair, or its assignees, this day, I acknowledge to be twelve thousand five hundred and eighty-two dollars thirty-seven cents, ($12,582 37) for which I have given my note, payable in the liabilities of the Bank.

(Signed)                    " H. T. STRINGHAM.
(Signed)      " E. HEUITT."

The case was argued by counsel, and the court took it under advisement, and on the 13th of February, 1856, made the following decree:

THE CIRCUIT COURT OF MILWAUKEE COUNTY—IN EQUITY.

*Harvey Durkee, complainant, against Henry T. Stringham, Joseph Stringham, Wesley Truesdail and Ramsey Crooks, defendants.*—ORIGINAL BILL.

*Joseph Stringham complainant, against Harvey Durkee, Wesley Truesdail, Ramsey Crooks, Henry T. Stringham, Isaac Taylor and Frederick Borchardt, defendants.*—CROSS BILL.

These causes came on to be heard upon the pleadings and proofs in the original and cross suits at this term, and were argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged and decreed as follows, viz: That Henry T. Stringham held the legal title to the lands and appurtenances mentioned in the original bill of complaint, as the trustee and agent of the Neshoto Lumbering Company, a joint stock company or copartnership, organized under written articles of association, and which lands and appurtenances were and are equitably the property of the company, the interests of whose members in such property are represented by stock certificates.

That the deeds and mortgages executed by Henry T.

118        WISCONSIN REPORTS.

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

Stringham to Joseph Stringham and Wesley Truesdail, of the company property are fraudulent and void as to the other shareholders in said company. That by said Henry T. Stringham's mortgage to Wesley Truesdail in 1840, and by his (said Henry's) deed to Joseph Stringham in 1840, the partnership existing theretofore between the members of said Neshoto Lumbering company was dissolved.

And it is further ordered, adjudged and decreed, that Harvey Durkee and the other shareholders in said company are entitled to an account from said Henry T. Stringham, and to have the partnership property distributed, after the debts of the company are paid. That Henry T. Stringham as trustee upon rendering his account, is entitled to credit for all sums actually and properly paid and expended by him for the company, prior to the dissolution thereof; and that he must be charged with all sums received by him, and with the rents and profits of the premises since April, A. D. 1837. That the several shareholders as shown by their ownership of certificates of stock in the year 1840, at the time of the dissolution were entitled to distributive proportions of the property of said company, after payment of all partnership or company debts; and that subsequent actual purchasers and owners of the scrip or stock certificates are entitled to the shares of the original holders at the time of the dissolution. That the certificates of stock were made the primary evidence of all shareholders in said partnership property, and the conveyance by any shareholder of his equitable interest in the lands belonging to said company, cannot pass a title as against the scrip held by such shareholder, and actually sold and transferred. That the quit claim deed of the lands, executed in 1844 by Henry T. Stringham to Joseph Stringham, did not carry or convey any right or claim of Henry T. Stringham, as trustee, to a balance of account in his favor, on settlement of his agency and trusteeship.

WISCONSIN REPORTS.           119

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

And it is further ordered, adjudged and decreed, that Wesley Truesdail must account for the rents and profits of said company's property since he took possession thereof on of the year 1843 to          in the year          when Isaac Taylor took possession thereof; and the said Isaac Taylor must account for the rents and profits since he took possession, and that it must be referred to a commissioner to ascertain who are the present actual owners of the property according to the principles herein stated; and also to take and state an account between Henry T. Stringham and the company, of his agency and trusteeship, and also to take and state the accounts between said Wesley Truesdail and Taylor as holding under Henry T. Stringham as trustee and agent, they having lawfully derived possession and claim of title from said Stringham. And it is further ordered, adjudged and decreed, that in case it should appear that the said defendant, Isaac Taylor, occupied and made valuable improvements upon the property, having a legal or equitable right to some portion of the premises according to the principles herein stated as the owner of scrip and stock, his improvement thus made on the common property should be saved or allowed to him in the final partition or distribution.

From the whole of which decree the complainant entered his appeal on the 23d February, 1856.

*Brown & Ogden* for appellants.

*Emmons & Van Dyke*, and *T. O. Howe*, for Taylor, appellee.

*By the Court,* COLE, J.   Although a considerable time has elapsed since this cause was argued, and even since the decision of the court was announced, reversing the decree of the circuit court, yet, hitherto, no opinion has been prepared and

filed, which would inform counsel, and the parties interested, of the views we entertain of the case. And it is no more than justice to the members of the court to say, that this delay is not attributable to a want of attention to the case, or to a failure to bestow upon it much more than the usual degree of time and labor, devoted to the examination and consideration of causes which come before this court. In consequence of the various proceedings had in the cause, it has become much complicated, the record is voluminous, the questions involved are numerous, and some of them difficult and obscure.

In the first instance, we were all clearly of the opinion that the decree of the circuit court was erroneous in some important particulars; but we were unwilling to send the case back to the circuit, without settling, if possible, all the questions raised in the discussion, and definitely and fully adjudicating all the rights involved in this protracted litigation. With this view, it was expected that each member of the court would prepare an opinion. This was desirable, and undoubtedly would have been more satisfactory. Recent events have, however, rendered this impossible; it is, therefore, thought best that I should, as briefly as possible, announce the conclusions at which we all arrived in our examination of the cause. Nothing like an extended discussion of any one point will be attempted, and some questions raised and discussed at length by counsel, will be no further noticed than that their substantial dispositions will follow from the determination of other questions in the cause. It is hoped that enough will be said to inform others of our views upon the merits of the case.

The first point that naturally presents itself, is one of practice. Some of the appellees, or Taylor, at least, as well as the appellant, Joseph Stringham, were dissatisfied with the decree of the circuit court, but neglected to take their appeal —supposing the appeal which was taken brought up the

## WISCONSIN REPORTS. 121

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

cause for a rehearing in this court, and necessarily opened the whole case for our consideration. But it is contended by the counsel for the appellant, that this is a mistake; and that even if we should be of the opinion that the decree was not as favorable to Taylor as it should have been, still that we cannot modify or amend it to his advantage, he not having appealed. This question has been carefully considered in this case, as well as in the case of *Wood et al. vs. Spaulding*, unreported, where the same point was made and elaborately discussed by counsel. In this case, the appeal was from the whole decree, while the case of Wood vs. Spaulding, the appeal was only from a part of the decree: and yet, in both cases, we were led to the conclusion that the appeal to this court opened the whole case, and that it was competent to modify the decree of the court below, and make it more favorable to the appellee, if the whole merits and equity of case required that this should be done. The following are some of the authorities, which, though not precisely in point, still have some bearing upon the question, and were considered in settling this rule of practice: 1 Tomlyns Law Dict., " Appeal;" 1 Spencer's Eq. Jurs., 393, chap. 10; 2 Daniel Ch. Pract., 1222; 3 id., 1602, 1628 to 1632; *Hill vs. Chapman*, 1 Sumners Vesey, 405, Note A.; *Consequa vs. Fanning*, 3 John, C. R., 587; *Glover vs. Hodges*, 1 Saxton, N. J. 113; R. S., chap. 84, s. 112. More time might be spent in the examination of this question of practice, were it not that, since the adoption of the code, it has no practical importance whatever, and therefore it will be dismissed without further remark. Being of the opinion that it is competent for the court, in reversing the decree for error, as respects Taylor, to further direct that the circuit court proceed and render one more favorable to his rights than the one appealed from, if the equities of the case shall require, we advance to the consideration of other questions in the cause.

And as a preliminary matter it becomes necessary and proper to glance at some of the features of the articles of association set out in the record, and ascertain, if we can, what power and rights the stockholders of the company, as between themselves, had over their shares of the company property. It appears from the articles of association that Harvey Durkee, Albert G. Ellis, Henry T. Stringham and some others, associated themselves together in February, 1837, and formed what was called in the written articles of association, the Neshoto Lumbering Company. The declared object of the company was, to raise moneys to be employed for the benefit of the members of the association, in the purchase and sale of lands situated on the borders and in the vicinity of Twin Rivers, in Wisconsin, to build mills, and machinery for sawing, grinding, and other purposes, on that river, and to lay out a town on the land of the company, and to make such improvements upon the land as might be deemed beneficial for the company. The capital stock, consisting, as it appears, almost exclusively of real estate, was divided into five hundred shares, for which the ordinary certificates were issued, declaring that the holder was proprietor of          shares in the capital stock and beneficial interests of the company, and had paid the sum of          dollars on each share, and that the same was subject to all the provisions, covenants and charges contained in the articles of association. These certificates of stock were made transferable by assignment, and it was provided in the articles of the association that the capital of the company, notwithstanding the conversion of any part of it into land, should be deemed and treated as personal property. The title of the real estate and of the personal property was vested in a trustee, in trust for the use of the company, who was the authorized agent to sell, bargain and convey the personal property, to lease the lands, make conveyances, and in his name

WISCONSIN REPORTS. 123

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

to take all conveyances, as trustee for the company. It appears that Albert G. Ellis was the first trustee, and was an original stockholder to the amount of one hundred and fifty shares. He resigned in July, 1837, and Henry T. Stringham became trustee, to whom three undivided fourths of the land mentioned in the articles of association were at that time conveyed by the former trustee, Ellis, and wife, to hold the same in trust for the company. It also appears that Henry T. Stringham became the owner of three hundred and eighty-seven shares—that is, of all, except sixty shares owned by Harvey Durkee, and fifty-three owned by Ramsey Crooks, the assignee of James D. Doty, an original subscriber to the stock. The appellee, Taylor, claims to own forty-three of the Crooks shares, having obtained the certificates, by purchase and transfer, from Wesley Truesdail, who, as cashier of the Bank of St. Clair, had also obtained them from Crooks. This joint stock company, which was not incorporated, as respects its liabilities, to third persons, would be generally governed by the rules and principles of common commercial partnerships. It is not very important, and yet it is well to remark, that it had some features peculiar and not found in commercial partnerships. No time was fixed for the continuation of the company, and a shareholder might sell and transfer his certificates and release himself from all liabilities of the association (at least as among the stockholders), and the transferee would become a member of the association, and entitled to the same rights and privileges as an original subscriber.

In these articles of association there is an evident purpose and design to give the real estate of the company, as far as possible, the quality of personal property, and as between the stockholders, perhaps, no objection could exist to such a stipulation. The trustee, who was required to be the owner of stock, to the extent, at least, of one share, took the title of

the property, real and personal, in trust, for the use of the company. The whole capital stock was divided into five hundred shares, and might be represented by as many certificates. Each certificate represented an equitable title, or interest, in the property of the association. It is obvious that a stockholder, who might own one hundred shares, would, as between him and the other stockholders, be equitably entitled to a one-fifth part of the property. If he should become the owner of four hundred shares, he would then become entitled to four-fifths of the property, and so on in a like proportion. And if the trustee should become the owner of four hundred shares, he would likewise become entitled to four-fifths of the property. Now by every principle of law it would seem that these certificates of stock, which, for convenience, were made transferable, by assignment, representing a proportionable interest in the property of the company, an interest which a court of equity would protect, and could be sold, pledged, or mortgaged by the owner, like any other kind or species of property. The mortgagee of such certificates would likewise have such an equitable lien, or interest, in the company property, as a court would recognize and protect. This proposition, to our minds is too plain for argument, and we would not have supposed that a doubt could be entertained upon the point, had not the circuit court held otherwise, as we understand their decision.

It now becomes necessary to refer to some further facts in the case :

It appears that on the 17th of January, 1840, Henry T. Stringham executed to his brother, Joseph Stringham, the appellant, a deed, absolute, on its face, by which he conveyed to him an undivided three-fourths of all the lands which he held in trust for the company. This deed was placed upon record the same month it was executed. It does not appear what number of shares Henry T. Stringham owned at the

time he executed this conveyance. On the 12th of March, following, Henry T. Stringham further executed to Wesley Truesdail, the cashier of the Bank of St. Clair, a mortgage upon all the lands which he held in trust, for five thousand dollars, as a security for the payment of his indebtedness to the bank. Subsequently it appears Truesdail learned of the existence of the deed, which had been previously given to Joseph, and early in 1843 came to an understanding or agreement with Henry T. Stringham, that Joseph should convey the lands to Truesdail, who was to hold them as security for Henry's indebtedness to the bank. Joseph was therefore applied to for a conveyance, but declined giving one, for the reason that he had just filed his petition for a discharge in bankruptcy, and had included these lands among his assets. Instead of a conveyance from Joseph, it was arranged between the parties that the lands should be sold by Joseph's assignee in bankruptcy, and bid in by Truesdail, and a conveyance made direct to Truesdail by the assignee, which was accordingly done, in May, 1843. And at this time Henry T. Stringham delivered to Truesdail all the title deeds and all the stock certificates which he then held, and Truesdail went into possession of the property.

A question has been made as to the nature or kind of interest, which was conveyed to Truesdail. by the assignee's deed, and an observation might as well be made here upon that subject, as elsewhere. The assignee's deed purports to convey, and undoubtedly did convey, to Truesdail, "all the right, title and interest whereof the said Joseph Stringham was seized on the 10th day of February, 1843," that is, all the title and interest which was vested in Joseph Stringham, at the time he made application for his discharge in bankruptcy It will be borne in mind that the deed from Henry T. Stringham, to Joseph, dated January 17, 1840, was absolute upon its face, and purported to convey three undivided fourths of

all the lands which he held as trustee of the company. Still, it is now insisted that the deed was really and truly given to secure the payment of five or seven hundred dollars, which Henry T. owed Joseph Stringham ; and that the latters interest in the company's property, or in the lands thus conveyed, was that of a mortgagee's to the amount of his debt against Henry, and that nothing more than this interest was conveyed by the assignee to Truesdail. We are disposed to adopt this view of this transaction; but still, it is to be observed, that in addition to this deed from the assignee, and the mortgage which Henry T. had previously given Truesdail for five thousand dollars, he turned over to Truesdail also all his certificates of stock, and title papers, to secure the amount which he then owed and might become liable for, to the Bank of St. Clair. So at this point of time it seems to us indisputable that Henry T. Stringham had assigned and conveyed to Truesdail his entire equitable estate and interest in the property of the association, and had nothing further to convey to any one except an equity of redemption. For, as we have already remarked, we know of no principle of law which inhibited him from mortgaging this interest, whatever it was, in the same manner that he could any other description of property. The rights of creditors are placed out of the account—they do not intervene here. This is an inquiry as to what it was competent for Henry T. Stringham to do with whatever interest he had in the property of the association. Could he not sell it ? Could he not mortgage it ? Most assuredly he could. What is the consequence ? That nothing remained in Henry T. Stringham after thus mortgaging his entire interest in this property but an equity of redemption. And according to our understanding of the case, this equity of redemption Henry T. Stringham and wife conveyed in 1844 to Joseph Stringham by the deed which they then made and executed. We find then that Truesdail, as the agent of the Bank of St. Clair,

or to come one step further down in the case, that the appellee, Taylor, the assignee of the Bank, holds the entire interest of Henry T. Stringham in and to the lands, and the property of the Neshoto Lumbering Company, subject to an equity of redemption outstanding in Joseph Stringham, upon being paid the amount due on the mortgage which had been assigned him. It appears to us that this is the precise, true, relation of the parties to each other and to this property. We leave out of view, for the time being, the forty-three shares which Taylor claims to own absolutely and which will be referred to hereafter. At what time the company was dissolved becomes quite immaterial to this discussion. When its debts are paid the company's property can be distributed to those justly entitled to it. Joseph Stringham is entitled to take Henry T. Stringham's interest upon paying the liens upon it. What the mortgage debt is will next be considered.

The testimony in the case shows that on the 19th day of May, 1845, Truesdail, on behalf of the bank of St. Clair, executed under his hand and seal, a declaration in writing, to the effect, among other things, that he held the Neshoto lands in trust, to secure the indebtedness of Henry T. Stringham to the Bank, and covenanting that if Joseph Stringham should well and truly pay him, or the assignees of the Bank the amount of such indebtedness, in the notes and liabilities of the Bank, or in cash, on or before the 1st day of January, 1846, that then he would convey to said Joseph Stringham all the title and interest which he held in such lands, &c. At the same time Henry T. Stringham signed a statement, on the same paper, in which he acknowledged that the amount due the bank, from him, was twelve thousand five hundred and eighty-two dollars and thirty-seven cents, for which sum he gave his promissory note payable on or before the first day of January, 1846, in the notes and liabilities of the bank. Although this declaration of trust or defeasance, and the set-

tlement then made with the bank, accrued after Henry T. had conveyed his equity of redemption in the Neshoto lands to his brother Joseph, yet the evidence satisfactorily shows that Joseph knew all about the transaction, was fully apprised of the amount which Henry acknowledged he then owed the bank; that he caused this declaration of Truesdail's to be put upon record in Manitowoc county, and consequently we think he should be held as much bound by these solemn acts and admissions of the parties as Henry himself. The precise amount of Henry's indebtedness to the Bank of St. Clair, at any particular period anterior to this settlement, and for the payment of which the bank have a lien upon this Neshoto Company property, cannot be accurately determined from the evidence in the case. The testimony goes to show that Henry, for some years, had considerable business with the bank—had become indebted to it for money advanced on his private account, and had also become liable to the bank upon other matters. But we think this settlement, the acknowledgement of Henry of the amount due the bank, the giving of his promissory note for this amount, affords the clearest, most satisfactory and conclusive evidence of the extent of his indebtedness, and the amount which in equity and good conscience he ought to pay to redeem his property. The appellant in his cross bill insists that Henry's indebtedness to the bank has been fully discharged, and an effort has been made to weaken or destroy the force of this evidence of the indebtedness of Henry T. Stringham to the bank, by proving admissions and statements of Truesdail, to third parties, before the settlement, in which, it is alleged, he represented that the five thousand dollar mortgage had been discharged, or that the bank had means in its possession, belonging to Henry, sufficient to meet it. But the testimony offered upon this point, consisting as it does of verbal admissions made by Truesdail, a kind of evidence which it is said by high authority, should

Durkee vs. Stringham et al., and Stringham vs. Durkee et al.

ever be received with caution, (1 Green Ev. Sect. 200) liable as it is to have been misunderstood at the time by the witness, or some material portions of which may have been forgotten, in our judgment cannot, and ought not, to overcome and destroy the force of a settlement deliberately made by the parties in interest, and who must have known the true state of the accounts they were adjusting. We do not therefore feel authorized to assume, from the evidence in this case, that the settlement between Henry T. Stringham and the Bank of St. Clair, made on the 19th day of May, 1845, was not fair and just, and worthy of credit, and that it does not show the true balance due from Henry T. Stringham to the bank. It should be held conclusive and binding between the parties until impeached by testimony stronger than anything we find in this case.

It appears that in November, 1847, all the right title and interest of the Bank of St. Clair in the Neshoto property and in and to the mortgages and claims against Henry T. Stringham, and in the certificates of stock, &c., were sold, transferred and assigned to the appellee, Isaac Taylor, who paid an adequate and valuable consideration therefor, and who soon after went into possession of the property, and for anything that appears in the case, is in possession of it to-day. He stands in precisely the same relation to the property that the bank did, clothed with the same equities, no more, no less.

It was suggested by his counsel, on the argument, that he now held all the interest which Henry T. Stringham ever had or was entitled to in the property, free from any equity of redemption in Henry, or his grantee, Joseph. But we really perceive nothing in the case which would change the original relations of the parties to each other, or the property, or which ought to bar the right of redemption. As to the forty-three shares, derivable from Doty and Crooks, we suppose Taylor holds those shares, and the interest they represent in the

property, disencumbered from any equity of redemption outstanding in the Stringhams. It was contended that, by the instrument or defeasance of May 19th, 1845, Truesdail covenanted and agreed to convey to Joseph Stringham, his heirs, &c., all the interest and title of the Bank of St. Clair in the Neshoto property, upon Henry's indebtedness to the bank being discharged, and that this agreement included the forty-three shares purchased by Truesdail from Crooks, September 27th, 1844. We do not think this is a fair construction of that instrument. We suppose by this instrument, Truesdail, on behalf of the Bank of St. Clair, agreed to convey, on the payment of the note which Henry had given to the Bank, the precise interest which the Bank held to secure such payment. Henry T. Stringham never owned these forty-three shares, and of course could never have mortgaged them to the bank, or anybody else.

Still further it was contended that these forty-three shares had become forfeited in consequence of the non-payment of certain assessments made upon the stock. It is a sufficient answer to this to say that the articles of association contain no power to forfeit stock. It was provided that if the association should not have funds sufficient to meet the expected liabilities of the company, the trustee had power, after the requisite notice, to require the stockholders to pay in on each share an instalment, not exceeding two dollars on a share; but he has no authority given him to forfeit stock in case of non-payment of calls. It does not appear that the trustee attempted to exercise this power of forfeiting stock, but if he had he evidently could not act beyond the scope of the authority given him in the articles of association. Henry T. Stringham, in his answer to the original bill, filed by Harvey Durkee in 1843, sets forth his account as trustee, and shows a large balance in his favor from the company. It has been insisted that this claim against the company Henry had transferred

to the appellant. We see no evidence of this, and we fully concur in the decision of the circuit court upon this point, that the balance of this account, whatever it may be, belongs still to Henry.

The contest in this case has been upon the issues made by the cross bill, and in that light we have examined the cause. We think the case ought not to go out of court upon any technical objection, or nice point of practice. The court has all the parties in interest before it, and can do complete justice between them. That this is a " consumation devoutly to be wished," cannot be denied, after more than fifteen years of litigation.

The circuit court held that the deeds and mortgages executed by Henry T. Stringham to Joseph Stringham and Wesley Truesdail, of the company property, are fraudulent and void as to the other stockholders. It follows from the views we have expressed, that this is erroneous, and that it was competent for Henry T. Stringham to give good and valid mortgages upon his own interest in this property, subject to the just debts of the company, and to any equities existing in favor of other stockholders. This we have seen he has done, and that the mortgage relation now actually exists between the appellant, the grantee of an equity of redemption, and the appellee, Taylor, the assignee of a valid subsisting mortgage.

The decree of the circuit court must be reversed, and the cause remanded for further proceedings according to law.